ADAMS FEMALE ACADEMY *& a.* v. ADAMS *& a.*

A fund given by will to trustees "to establish a female academy," &c., may be used by the trustees for the support of a public school at the same place in connection with a town, when it has become impracticable to maintain a female academy with it; but the location of the school cannot be changed, nor can the fund be taken from the charge of the trustees provided in the will.

BILL IN EQUITY, by the trustees of the Adams Female Academy, asking for leave to sell certain real estate, and to apply the whole income of the institution, according to an act of the legislature, to the support of a public school in connection with the town of Derry. The original fund of the academy was given to a board of trustees by Jacob Adams, by will, "to establish a female academy in Londonderry for the education of females," the location of such academy being fixed by the will.

*David Cross*, for the plaintiffs.

*F. R. Felch* and *Frink & Batchelder*, for the defendants.

CLARK, J.    The trust created by the will of Jacob Adams "to establish a female academy in Londonderry for the education of females," was a gift to charitable uses. It was accepted by the trustees, and has been administered for a period of sixty years, according to the purpose of the testator expressed in the will. The trustees represent that circumstances have so changed that the

VOL. LXV.    16

original plan of administering the trust is no longer practicable, and they ask the direction of the court whether they may change the mode of executing the same by converting certain real estate held by them as a part of the fund into money, and applying the income of the fund to the support of a school in connection with the Adams school-district, a corporation embracing the territory where the Adams Female Academy is located, and empowered by law to receive and use the income of the academy fund for educational purposes.

The question is, whether the proposed change in the mode of executing the charity is reasonable and allowable under the terms of the bequest by which it was created. The necessity of a change is shown by the fact that the fund is insufficient to maintain an independent school at the present time, and unless some other mode of executing the trust can be adopted the charity must fail. The reasonableness of the plan suggested is shown by the fact that it seems to be the nearest practicable method of carrying out the expressed intention of the donor. Whether the change is allowable under the terms of the bequest is a question of construction.

The doctrine of *cy près*, although perhaps not formally adopted in this state, has been recognized. *Society* v. *Society*, 14 N. H. 315, 330; *Brown* v. *Concord*, 33 N. H. 285, 296. And regarded as a rule of construction and not of administration (Per. Tr., s. 723) it is a reasonable doctrine, by which a charity may be enforced in favor of the general intent, even where the particular mode or means provided by the donor fails by reason of its inadequacy. The rule of equity on this subject seems to be clear, that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity; for equity will substitute another mode, so that the substantial intention shall not depend upon the formal intention. *Philadelphia* v. *Girard*, 45 Pa. St. 27; *Jackson* v. *Phillips*, 14 Allen 539. The doctrine of *cy près* adopted to this extent is in harmony with the equitable rule, that a liberal construction is to be given to charitable donations to accomplish the general charitable intent of the donor.

Upon the facts appearing in the case, the trustees are authorized to make the proposed change in the mode of administering the trust. The purpose of the donor was, to provide a fund for the education of females, and the language of the will indicates an intention to establish a permanent charity. The bequest was not in terms restricted to the original plan of the donor, which having become impracticable by reason of a change of circumstances, a . reasonable construction of the terms of the gift authorizes the trustees to adopt any mode of administering the trust which will accomplish the ultimate purpose of the testator, if such a scheme is practicable, and the plan proposed seems best adapted to carry-

ing out the charitable intention of the testator under existing circumstances.

*Decree accordingly.*

BLODGETT, J., did not sit: the others concurred.

Some time after the foregoing opinion was announced, the defendants proposed a different method of dealing with the fund, and the following opinion was thereupon rendered:

CLARK, J. The defendants submit as a substitute for the plan of administering the fund proposed by the trustees, and approved by the court upon a former consideration of this case, that the fund be placed in the hands of the trustees of Pinkerton academy as successors to the trustees of the Adams Female Academy, or that the trustees of the Adams Female Academy be authorized and directed to pay over to the trustees of Pinkerton academy the annual income thereof, to be applied to the payment of the tuition of females who may be deemed deserving by the trustees of Pinkerton academy, and who may reside within the limits of the original township of Londonderry as it existed at the decease of the testator, Jacob Adams; or for the education of females at Pinkerton academy in any way deemed advisable by the trustees thereof. Aside from the objection that a question of law once decided at the law term will not be reconsidered in the same case except on a motion for rehearing (*Plaisted* v. *Holmes*, 58 N. H. 619), substantial reasons exist why the plan proposed by the defendants cannot be adopted.

The donor of a charitable fund may annex to it any lawful conditions or limitations that he chooses, and the fund must be administered in conformity therewith, so far as it can be and carry out the intention of the donor. He may direct the mode and place of the application, as well as the use to which the fund is to be applied. In creating the charity under consideration, the testator specifically determined two things,—the place of its permanent location, and the authority that should manage and administer the fund. He appointed a board of trustees with power of perpetuation, to whom the management of the fund and the administration of the trust should be committed, and provided that the school for the benefit of which the income of the fund was to be applied should be located and forever established within one hundred rods of the place where the meeting-house in the first parish in Londonderry then stood. These provisions cannot be unnecessarily disregarded. The testator having stipulated that the fund should be managed and administered by a designated board of trustees, the court cannot interfere to control their action unless they abuse the authority conferred upon them, or refuse to exercise it. The plan of administering the fund proposed by the trustees being author-

ized by the terms of the trust, the court has no jurisdiction to direct a different application.

But the limitation as to the place where the charitable gift is to be applied to educational uses presents an insurmountable objection to the mode of appropriation suggested by the defendants. It is stated in the plaintiffs' bill, as a matter of history, that the removal of a school which had been previously maintained at Derry Upper Village to another part of the town created dissatisfaction on the part of the testator and other residents of the village, and this furnishes a reason why the limitation as to location was attached to the charitable bequest. The fact that the school thus removed and established in another part of the town is now Pinkerton academy, shows that a construction of the bequest allowing a transfer of the fund to that institution, if otherwise admissible, would be in direct opposition to the intention of the testator. But such a construction is not admissible. The language designating the location is imperative and unequivocal, and the limitation absolute. The words "located and forever established" do not allow a change of location. In this respect there is no room for *cy près* construction. A transfer of the educational use to another locality would be a perversion of the fund. Per. Tr., *ss.* 723, 733.

*Exceptions overruled.*

BINGHAM, J., did not sit : the others concurred.