Cheshire,  ⎱
Feb. 2, 1909. ⎰

## KEENE v. EASTMAN, Att'y-Gen'l, & a.

The absence of a provision for forfeiture in a deed to charitable uses is evidence that the donor did not intend that the estate should revert so long as the accomplishment of his general purpose is practicable.

A gift to a municipality for the establishment and maintenance of public library accommodations constitutes a charitable trust, which is to be so administered as to effectuate the general purpose of the donor, if a literal compliance with the terms of the gift is impossible or impracticable by reason of changed conditions.

A municipality which accepts gifts of property to be used in the erection of a library building and the maintenance of a public library therein is not thereby incapacitated from accepting a subsequent donation of a building suitable for library purposes.

BILL IN EQUITY, brought by the city of Keene against the attorney-general, the trustees of the Keene public library, and others. The attorney-general and two trustees demurred to the bill, and the case was transferred without a ruling from the April term, 1908, of the superior court by *Stone*, J.

The material facts alleged in the bill are as follows: In 1874, the Keene Public Library Association, a voluntary association, gave to the city of Keene its library and other personal property, upon the agreement that the city should keep the library in suitable apartments for the use of its inhabitants, and thereupon the city entered upon the performance of its agreement. Afterward and before 1890, one Symonds gave by will to the city certain property for the following purposes: "To build a library building and purchase land therefor, and to provide books and reading matter, and to take care of the same, and this fund may be used in connection with any city appropriation for the same purpose." This fund has not been devoted to the purposes of the trust, but has been allowed to accumulate.

In 1890, one Coolidge conveyed to the city a certain lot of land in Keene, upon the following conditions: "Provided, however, and this deed is made upon the express condition, that said premises shall be forever held and used for the purpose of erecting and maintaining a public library building thereon and for utilizing so much thereof as is not used for library purposes for a public park and for no other purpose whatever, said grantee to take and enjoy the rents and income therefrom until such reasonable time as the same shall be devoted to the purposes aforesaid." The city has not devoted this property to the purposes mentioned in the deed.

In May, 1898, one Thayer submitted to the city a proposition in writing, in which he offered to convey to the city a lot of land and the buildings thereon in Keene, after having made such changes as were necessary for library purposes, reading rooms, an art room, a museum, and a lecture room, provided that the use of the property should be limited to the purposes named and that the present city library should be established in said buildings. It was also provided that the government of the library should be vested in a board of twelve trustees, six of whom should be appointed by Thayer and be empowered to name their successors, and the other six to be elected by the city. The city councils by vote accepted this trust. Thayer died before conveying the property, but in December, 1898, his widow and his only heir by deed conveyed it to the city " upon condition that said city of Keene shall forever maintain and keep in repair a city library, with reading rooms, art room, museum, and lecture room . . . upon said premises, and shall use the same for no other purpose whatever, agreeably to the provisions of a certain proposition made to the said city of Keene, signed by Edward C. Thayer, on May 31, 1898." The city took possession of the property, its public library was moved into the library building thereon, and its control was turned over to a board of twelve trustees. It was believed that some arrangement could be made to use the Coolidge lot for some other public purpose than that of a public library. It is alleged that the action of the city in accepting the Thayer deed was *ultra vires* and illegal, and the prayer is that that deed be cancelled.

*John E. Allen,* for the plaintiffs.

*Edwin G. Eastman,* attorney-general, *pro se.*

*Cain & Benton,* for the trustees.

WALKER, J. The property held by the city under the Symonds will and under the Coolidge and Thayer deeds is devoted to charitable uses by the terms of those instruments. The general and controlling purpose of the donors was to promote the welfare of the people living in the vicinity of Keene by the establishment and maintenance of public library accommodations. The underlying purpose of all the donors was substantially the same, while the methods suggested for carrying out their ideas are somewhat dissimilar. Nor are there any conditions imposed, the literal observance of which is declared to be essential to the continuance of the charities. A forfeiture of the funds or estates created is

not expressly provided for; and it is a principle adopted by courts in the construction of charitable trusts, that the absence of a provision for forfeiture is evidence that the donor did not intend the estate should revert while the carrying out of his general purpose is practicable. *Ashuelot National Bank* v. *Keene*, 74 N. H. 148, 153. In the case cited it was expressly held that the Coolidge deed created a charitable trust and not an estate upon condition subsequent. In consonance with this principle, and perhaps in consequence of it, the doctrine of *cy pres* in the construction of charitable trusts has been evolved. When the gift cannot be carried out in the precise mode prescribed by the donor, effect has been given to his general purpose by adopting a method which seemed to be as near his intention as existing conditions would permit. Such a construction is not the result of an arbitrary power exercised in disregard of the donor's wishes for the public benefit, but is as truly based upon a judicial finding of his intention as applied to new conditions, as is the construction of a will, deed, or other written contract. The making of a gift for charitable purposes, which is unlimited as to the length of time it may continue, presupposes a knowledge on the part of the donor that material changes in the attending circumstances will occur which may render a literal compliance with the terms of the gift impracticable, if not impossible; and it is not unreasonable to infer that under such circumstances the nearest practicable approximation to his expressed wish in the management and development of the trust will promote his intention to make his charitable purpose reasonably effective; for it would be rash to infer that he intended that the trust fund should be used only in such a way that it could not result in a public benefit,—in other words, that he wished his general benevolent purpose to be defeated, if his method of administering the trust should become impracticable. This idea is thus expressed in *Adams Female Academy* v. *Academy*, 65 N. H. 225, 226: "The rule of equity on this subject seems to be clear, that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity; for equity will substitute another mode, so that the substantial intention shall not depend upon the formal intention." In that case the maintenance of an academy for the education of females, in accordance with the literal language of the trust, for several reasons became impracticable, and the trustees were allowed to use the fund for the support of a public school at the same place in connection with the town. But further discussion of this subject at this time is unnecessary. Enough has been said to show that the trusts for library purposes in Keene are charitable in their nature, and that they are to be so administered as to carry out

the intention of the donors, and not to defeat it by a literal compliance with all the expressed terms of the gifts which changed circumstances may have rendered ineffective to accomplish the substantial purposes of the trusts.  The following authorities upon this subject are referred to: *Chapin* v. *School District*, 35 N. H. 445, 454; *Sanderson* v. *White*, 18 Pick. 328, 333 ; *American Academy* v. *Harvard College*, 12 Gray 582, 596; *Jackson* v. *Phillips*, 14 Allen 539 ; *Brown* v. *Society*, 9 R. I. 177, 186; *Stanley* v. *Colt*, 5 Wall. 119, 169; 2 Per. Tr., s. 744.

It is argued in behalf of the city that, having accepted the Symonds and Coolidge gifts, it was incapacitated from accepting the Thayer gift, and that the latter gift should be declared to be null and void.  This argument is based upon the assumption that the city under the Thayer deed became obligated to violate the terms of the other trusts; in effect, that it had agreed to build a library building on the Coolidge lot, and that as two library buildings are inexpedient and unnecessary it could not accept the Thayer building.  It is not alleged that the public good would not be promoted by more than one library building.  But if it is assumed that such is the fact, there is no such necessary inconsistency between its acceptance of the Thayer deed and its duties under the Coolidge deed as would authorize the court to declare the former to be void.  In 1890, when Mr. Coolidge conveyed the land to the city, it had no library building, and he undoubtedly had that fact in mind and desired to give a lot upon which such a building might be erected.  But he did not think it would be built at once, for he gave the income to the city " until such reasonable time as the same shall be devoted " to the purposes of the trust.  As a reasonable man, he must have contemplated that the city might receive from some other person a gift of a lot and building for library use before erecting one on his lot, which would constitute a material change in the public needs.  He must have known that many things might occur which would render it impracticable for the city to build a library building upon his lot.  He did not intend to require the city by accepting the trust to build upon the lot if before doing so the existing public need of a lot, as he viewed it, had been met by the generosity of other persons.  He did not intend to supply a want that did not exist.  Though it existed at the date of his deed, it may have ceased when the Thayer heirs donated a lot of land with a suitable library building upon it, which was sufficient for the public needs. But while it seems clear that he did not intend to require the erection of a building on his lot, if upon a reasonable consideration of the public needs it would be of no public benefit, or would entail an unjustifiable burden upon the city and would be imprac-

ticable, it was nevertheless his purpose to provide a lot for a library building when the public good would be promoted thereby. If at the present time, in view of all the attending circumstances, a library building on the Coolidge lot would not in a reasonably practical manner promote the public good, because the public is amply and sufficiently provided with library accommodations in the Thayer building, there is no such existing need for a library building as Mr. Coolidge had in mind when he established the trust. The public want in this respect does not now exist, and the expenditure of money in erecting another building for library purposes might not only be useless, but it might not in any true sense tend to promote or carry out the charitable purpose of Mr. Coolidge.

But occasion for the use of this vacant lot for library purposes may arise. The present situation in Keene with reference to public requirements is not permanent. The increase in population and wealth, together with more advanced views in regard to library accommodations, may make two library buildings a public necessity in a city of the size and importance of Keene. Indeed, the development of library extension in some cities already requires more than one library building. Branch libraries located in the different sections of a town or city are beginning to be recognized as useful aids in library work. It cannot be said judicially that a "reasonable time" may not come when the use of this lot for a library building will be practicable.

But the allegations of the bill do not aver that another library building on the Coolidge lot would be of no public advantage, or that the building of such a structure would be impracticable as a means of rendering that trust effective. It is therefore sufficient to hold upon this branch of the case, that the city by accepting the Coolidge property was not rendered incompetent to accept the Thayer property. There is no provision in either of the deeds that makes such a result necessary; and in view of the public character of the trusts, which it is the policy of the law to uphold, no such inconsistency or practical difficulty in the reasonable administration of the trusts appears from the bill as makes it legally impossible for the city to carry out the trust duties imposed upon it by the Thayer deed. The efficient performance of its fiduciary duties with reference to that trust is not necessarily a breach of similar obligations previously incurred by it with reference to the Coolidge property.

What instructions might be deemed advisable upon proper proceedings for the enforcement of the Coolidge trust it is not now necessary to consider, in the absence of a full finding of the competent facts. A literal compliance with the terms of that deed

may or may not appear to be practicable. That question is not now properly before the court, and no opinion upon it is expressed. For similar reasons it is not useful at this time to speculate as to the best mode of administering the Symonds trust. If it is impracticable to use the fund or a part of it in buying land and building a library building upon it, it does not follow that the trust will fail or be forfeited. Its general charitable purpose may be carried out in some other practicable way. A solution upon equitable grounds of any difficulties that may arise from the city's several library trusteeships does not appear to be impossible.

The further suggestion is made on the part of the city that by the terms of the Thayer gift it agreed to turn over the library books and other property it had received from the Keene Public Library Association to a board of twelve trustees, six of whom only were to be elected by the city, the other six being chosen by Mr. Thayer and authorized to choose their successors. This arrangement when carried out by a vote of the city councils, it is argued, was an attempted delegation of municipal power and in contravention of the terms of its gift from the Library Association, and the inference is drawn that for this reason the Thayer deed is void. But it is unnecessary to consider the question suggested. The facts alleged in the bill do not support the assumption that under the Thayer deed, if valid, the city became bound to surrender the management of its public library, including the property received from the Library Association, to agents or trustees, some of whom were not appointed by it and were not subject to its control. While it is true that Mr. Thayer provided in his proposition, which was accepted by the city, that six of the trustees should be appointed by him and should elect their successors, it appears that he died before the deed was given. The city derived no title from him, and the transaction was not completed in his lifetime. He did not exercise his power to appoint the trustees, nor did he designate any one to perform that office upon his decease. When the deed was executed by his widow and his heir, for the purpose of carrying out his wishes and in accordance with his proposition, his exercise of the power of appointment was impossible. If the reference in the deed to "the provisions of a certain proposition made to the city of Keene, signed by Edward C. Thayer," was a general adoption of those provisions in the deed as a specification of the terms of the trust, it obviously did not have that effect with reference to the clause in question. And as the grantors did not provide how the trustees should be appointed, the city was not restricted by the deed as to the method of appointment. If the city has in fact allowed some of the trustees to be appointed by the grantors, in accord-

ance with the assumed wish 'of Mr. Thayer, the validity of the trust is not affected thereby. The city did not attempt to delegate its power of appointment by accepting the deed. The demurrer must be sustained.

*Case discharged.*

All concurred.