Merrimack,  
March 7, 1916.

ARTHUR WINSLOW, *Trustee,*   *v.*   CHARLES F. M. STARK *& a.*

In the construction of charitable trusts, the absence of a provision for a forfeiture is evidence that the donor did not intend the estate should revert while the carrying out of his general purpose is practicable.

Equity never allows a legal and valid trust to fail for want of a trustee; hence, where the beneficiary of the surplus of a trust estate is also its trustee, his declination to serve does not defeat the trust in his favor.

In a trust for the care and maintenance of property the determination of the amount to be expended therefor and the question whether any of the unexpended income should be retained for unexpected emergencies are ordinarily questions of fact within the trustee's discretion, which must be exercised fairly and reasonably, subject to the revisionary power of the superior court.

PETITION, for advice in the expenditure and disposition of the income of a trust fund created by the will of Harriet Stark for the care of the Stark "Family Burying Ground or Cemetery" in the town of Dunbarton.

Transferred from the April term, 1915, of the superior court, by *Chamberlin,* J., upon facts found but without a ruling.

By the will a fund of $2,000 was placed in the hands of Charlotte Stark as trustee, the income to be "applied, appropriated and expended in keeping the walls, iron railings, and monuments now erected, or which may hereafter be erected, in said Burying Ground, in perfect and complete repair, and in ornamenting the premises as before described, at her discretion." By the provisions of the will after the decease of Charlotte the fund was to go to Caroline Julia and Mary Elizabeth Stark in trust during their lives and during the life of the survivor of them, the income to be annually applied, appropriated and expended as required in the bequest to Charlotte. After the death of Caroline Julia and Mary Elizabeth Stark the cemetery was bequeathed to the president and trustees of St. Paul's School, and their successors in office forever, upon condition that it should never be alienated, or be suffered by them to be desecrated, but be kept for a "Burying Ground or Cemetery"; and said sum of $2,000 was bequeathed to the president and trustees of said St. Paul's School, and the income, or so much as was necessary, to be applied in keeping the "cemetery, walls, railings and monuments in good repair, and the surrounding grounds in good taste and neat condition, and the balance of said

income, not required for said purpose, to be expended for the benefit of said Saint Paul's School at the discretion of said president and trustees.''

Harriet Stark died May 4, 1872, and Charlotte assumed the duties of trustee, and administered the trust until she resigned, January 8, 1889.

The president and trustees of St. Paul's School declined the trust before their title accrued.

Caroline Julia and Mary Elizabeth Stark died respectively January 13, 1888, and October 22, 1881. Upon petition of Charlotte Stark to the probate court after her resignation, Charles F. M. Stark, the defendant, was appointed trustee and administered the trust until sometime in 1914, when he resigned, and the plaintiff was appointed trustee by the probate court. After the defendant was appointed trustee, he received from Charlotte $2,000, the original trust fund, and $506, unexpended income. The plaintiff after his appointment received from the defendant the fund of $2,000 and unexpended income of $1,816.29. The residuary legatees of Harriet Stark are the defendant, who would take two thirds, and Sallie S. Winslow and others unknown, who would take one third.

It is the contention of Charles F. M. Stark, who is the only one that appears as defendant, that the fund of $1,816.29 (unexpended income) is not part of the trust fund, and that it belongs to the present owners of Harriet's residuary estate; or, if this is denied, that the portion of the fund of $1,816.29, which accumulated during the administration of the defendant belongs to him, he having taken the trust on the same terms as it was offered to St. Paul's School. At the defendant's request the trial court found that the walls, railings and monuments of the cemetery had been kept by the defendant, while he was trustee, in substantially the same condition as formerly kept by Charlotte Stark, while she administered the trust, and the surrounding grounds generally kept in good taste and neat condition; that the outer walls northerly of the road to "Clough Corner," and on the road to Hopkinton, near the old mill were in a "tumble-down" condition, not neat in appearance nor effective against the intrusion of animals, if any were allowed to pasture there; that, if the cemetery is to be kept in the future in substantially the same condition it always has been since 1872, the annual income of the $2,000 is sufficient for that purpose; but if improvements of the character suggested in the transferred case are made, a larger sum will be needed.

Advice is sought by the plaintiff upon the following propositions:

1. Is the trustee at liberty to use the accumulated income in improvements and adorning the cemetery?

2. Is the trustee at liberty to retain any portion of the unexpended income as a reserve for unexpected emergencies?

3. What disposition must the trustee make of any portion of the income remaining unexpended?

*S. C. Eastman* and *Foster & Lake* (*Mr. Eastman* orally), for the plaintiff.

*Martin & Howe* (*Mr. Howe* orally), for the defendant.

PLUMMER, J.   The contention of the defendant, that a portion of the unexpended income of the $2,000 trust fund belongs to him, cannot be sustained.   His first position is that the income unexpended by Charlotte Stark and himself as trustees, amounting to $1,816.29, did not go to the plaintiff as trustee of the fund, but belongs to the residuary legatees of Harriet Stark.   There would seem to be no basis for such a conclusion.

Whether the testatrix intended that Charlotte, Caroline Julia and Mary Elizabeth Stark as trustees should spend all the income of the fund in the care of the cemetery cannot be determined by the will.   But it is apparent that in the gift of the fund to St. Paul's School, she thought all of the income might not be required in the care of the cemetery, for she provided that any income not so needed should be expended for the benefit of the school.   There is no intimation in the will that any unexpended income of the fund should be paid to her residuary legatees.   Neither is there any provision in the will for a forfeiture of the trust fund or any part of it, in case its execution should fail in any particular; "and it is a principle adopted by courts in the construction of charitable trusts, that the absence of a provision for forfeiture is evidence that the donor did not intend the estate should revert while the carrying out of his general purpose is practicable."   *Keene* v. *Eastman*, 75 N. H. 191.   It was probably the intention of the testatrix, if the trustees named by her did not use all of the income of the trust fund in the care of the cemetery, that the balance unexpended should go to St. Paul's School.

If such was not her intention her will would undoubtedly have provided for the disposition of any unexpended income in the hands of the Stark trustees.

The second claim of the defendant, in case his first position is found untenable, is that the portion of the unexpended income that was accumulated during his administration of the trust belongs to him, he having taken the trust on the same terms as it was offered to St. Paul's School.

The defendant points out no way by which this claim can be maintained. He was appointed trustee upon the refusal of St. Paul's School to assume the administration of the trust, and cared for the cemetery, but that does not give to him the income not needed for its care. There is no provision in the will that gives the income not required for the cemetery to any one except St. Paul's School. Although the defendant may have desired to assume the trust on the same terms as the school was to have it, still he cannot do so, for there is no language in the will that makes it possible.

The title to the trust fund of $2,000, and to the accrued income from it, is in the plaintiff as trustee.

The plaintiff as trustee can use such a part of the unexpended or accruing income of the trust fund as is necessary to keep the Stark family cemetery, its walls, railings and monuments in good repair, and the surrounding grounds in good taste and neat condition, and if improvements, repairs or new construction are necessary to keep the grounds in good taste and neat condition, it is within the province of the trustee to make them. How he shall care for the cemetery, and make improvements, and the amount of money to be used therefor is within the discretion of the trustee. But his discretion is to be exercised fairly and reasonably, and is subject to revision, and whether he properly exercises it, is a question of fact for the trial court in case any controversy arises in relation thereto. *Cram v. Cram*, 63 N. H. 35; *Abbott v. Abbott*, 76 N. H. 225. Whether any of the unexpended income should be retained by the trustee for unexpected emergencies is not a question of law.

That part of the income of the trust fund not required for the care of the cemetery should be paid by the trustee to the president and trustees of St. Paul's School to be expended for the benefit of the school at their discretion. The primary object of the testatrix in the portion of her will under consideration was to provide for the perpetual care of the Stark family cemetery. The secondary purpose was to benefit St. Paul's School. The president and trustees of the school were unwilling to undertake the management of the cemetery and declined the trust. But it does not appear that they have refused to accept the surplus income and execute the

further trust of expending such surplus "for the benefit of said Saint Paul's School." It is not probable that they will so refuse. Until such refusal appears, it is not useful to consider what should be done with the surplus in that event. The declination of the president and trustees of St. Paul's School to accept the trust did not defeat it. "The effect was merely to leave its execution to another trustee. It is a rule without exception that equity never allows a legal and valid trust to fail for want of a trustee." *Campbell* v. *Clough*, 71 N. H. 181, 183; *Wilson* v. *Towle*, 36 N. H. 129.

The trustee by applying as much of the income of the trust fund as is necessary to the care of the Stark family cemetery, and paying the balance to the president and trustees of St. Paul's School will execute the trust in conformity with the intentions of the testatrix as expressed by her will.

*Case discharged.*

All concurred.