Rockingham, }
April 2, 1929. }

CHARLES H. BORCHERS & a., *Trustees*, v. ELBRIDGE B. TAYLOR & a.

*Chester T. Woodbury* and *William H. Sleeper* (by brief and orally), for the plaintiffs.

*Everett W. Crawford* (of Massachusetts) and *George R. Scammon* (*Mr. Crawford* orally), for the defendant Ernest L. Taylor.

*Rowell, Clay & Eastham* (of Massachusetts), *Arthur O. Fuller* and *Perley Gardner* (*Mr. Clay* orally), for the estate of Levi W. Taylor, and Edward S. Phillips, guardian of Marion P. Phillips.

BRANCH, J. The defendants contend that if the evidence which went in subject to exception is to be considered in the interpretation of Enoch Taylor's will, we are bound by the first of the alternative findings of the trial court set forth above. The argument is that "the findings of fact being based upon evidence which would at least warrant these findings, are not susceptible of review by the Supreme Court." The only authority cited in support of this position is *Heywood* v. *Stiles*, 124 Mass. 275, and the argument indicates a misconception of the character of the question before us. While it has frequently been pointed out that the interpretation of any grant, statutory, contractual or testamentary, consists in the ascertainment of intention, and that the question of intention is one of fact to be determined upon all the competent evidence available (*Cram* v. *Cram*, 63 N. H. 31, 33; *Burke* v. *Railroad*, 61 N. H. 160, 233; *Brown* v. *Bartlett*, 58 N. H. 511), still the question of interpretation has always been recognized as one peculiarly within the province of the court as distinguished from the jury; hence it has usually been called and has uniformly been treated as a question of law subject to review by appellate courts. "In one sense, their intention is a matter of law: it is a question for the court. In another sense, . . . it is a matter of fact: it is to be determined by the natural weight of competent evidence." *Sanborn* v. *Sanborn*, 62 N. H. 631, 643; *State* v. *Hayes*, 61 N. H. 264, 330. "Whatever name is given to the question involved, — whether it is called a question of fact determinable by the court upon all the competent evidence, or a question of law determinable by the court, but like a question of fact, — the essential proposition concerning it remains. It is a question for the court." *State* v. *Railroad*, 70 N. H. 421, 434. The entire question of interpretation is brought here for determination upon the transfer of the case from the superior court, and it follows, of necessity, that all subsidiary findings of the trial court in regard to the intention of the testator are also open to review. "The interpretation of the deed is a question of law in that it is reviewable by this court so that the finding of fact by the trial court as to the intention of the parties may be disregarded." *Emery* v. *Dana*, 76 N. H. 483; *Smart* v. *Huckins*, 82 N. H. 342, 344. Hence whatever evidence was properly introduced at the trial in connection with the construction of the will is before us now for consideration. *Smart* v. *Huckins*, *supra*.

The portion of the will now in question reads as follows: "7. If my daughters die without leaving issue, I give to the Town of Salem . . . all the rest, and residue of my property to be holden as a fund, the income to be spent for a high school the tuition to be free to all scholars of the town over twelve years of age. The fund to be managed by the selectmen of the town and to be held by the Town Treasurer. This school is to be kept within one hundred rods of the present Town House." The town, for adequate reasons, erected a high school at a point 283.5 rods from the town house mentioned in the will. Tuition in this school is free to all children residing in the town of Salem, and the trustees now seek authority from the court to use the income of the above fund for the purpose of maintaining this school. The parties agreed at the trial that it is not practicable to have more than one high school in the town of Salem, and the court properly found that unless the trustees are allowed to expend the income of the fund to maintain the high school where it is now located, the charity will fail. The contention of the defendants is that it was a material condition of the gift that the proposed high school should be placed within one hundred rods of the town house; that the town has committed a breach of this condition by building a high school more than one hundred rods from the town house; that the trust, therefore, fails and the trust fund becomes intestate property which the heirs of Enoch Taylor are entitled to take.

The defendants seem to assume that the language used in the last sentence of the paragraph now under consideration has reference only to the location of the proposed high school building and is equivalent to a provision that it shall be erected within one hundred rods of the town house and kept there, or in other words, shall never be moved. It is by no means clear that this assumption is valid. In New England, and particularly rural New England, the verb, to keep, has a well defined local meaning when used in connection with schools. It has reference to the actual conduct of school activities. To "keep school" means to teach school. School "keeps" on the days when it is in session and is not "kept" on holidays. The testator and the scrivener who drew this will were exactly the kind of men who might be expected to use the word in this sense. Thus understood, the sentence under consideration would simply mean: this school is to be conducted within one hundred rods of the town house. It would not carry with it the implied command that the building must remain forever upon the site specified regardless of changing conditions, which the defendants read into it. The erection of a high school building was not, in fact, at all

necessary to the operation of the trust. A high school conducted in the town house or any other available structure within one hundred rods of it would have been equally entitled to the benefit of the trust income.

It is not necessary, however, for us to decide at this time whether or not the construction of the testator's language suggested above is correct, for there are other cogent reasons why the defendants' contention cannot prevail.

We are asked to give the sentence in question the effect of a condition subsequent, the breach of which operates to divest the donees of their title, causes the trust to fail and brings about a partial intestacy. Courts of equity hesitate to adopt a conclusion which brings about any one of these results, and it seems to be a sufficient answer to the defendants' argument to point out the fact that the supposed condition upon which they rely is not expressed as a condition. There are in fact no "conditions imposed, the literal observance of which is declared to be essential to the continuance of the" charity. *Keene* v. *Eastman,* 75 N. H. 191, 192. The direction that the school shall be kept within one hundred rods of the town house is accompanied by no provision for a forfeiture in case of non-compliance, "and it is a principle adopted by courts in the construction of charitable trusts, that the absence of a provision for forfeiture is evidence that the donor did not intend the estate should revert while the carrying out of his general purpose is practicable." *Keene* v. *Eastman, supra,* 193; *Winslow* v. *Stark,* 78 N. H. 135, 137. This inference receives added support in the present case from the sixth clause of the will which indicates that it was the testator's intention to have his collateral relatives receive only one thousand dollars out of his estate in case his daughters died without issue. It has been said that equity will not lend its aid to enforce either a penalty or a forfeiture or to divest an estate for breach of condition subsequent. *Ricker* v. *Blanchard,* 45 N. H. 39, 47; *Smith* v. *Jewett,* 40 N. H. 530, 534. *A fortiori,* equity will not imply a provision for forfeiture where none is expressed. The suggestion that this will was drawn by a layman who probably. did not know how to frame a condition with technical exactness is without weight. If a condition had been intended, even a layman would have been able to use language more suitable than this to stress the importance attached by the testator to the provision. The words used are lacking in force and amount to little more than an expression of desire on his part. To give this sentence the effect claimed for it by the defendants would cause the trust provision to fail and hence

would violate the rule of construction which forbids implications that would annul any clause capable of a reasonable interpretation and effect. *Sanborn* v. *Sanborn*, 62 N. H. 631, 644; *Dennett* v. *Dennett*, 43 N. H. 499, 501.

In *Adams &c. Academy* v. *Adams*, 65 N. H. 225, when confronted by a similar situation, the court found no difficulty in permitting a trust fund, created "to establish a female academy in Londonderry for the education of females" to be used for the support of a public school conducted by the school district in the academy building. When that case came up for the second time, the court was called upon to face no such dilemma as is here presented. It was then asked only to decide between two plans for carrying out as nearly as possible the general charitable purpose of the testator, one of which contemplated assistance to a school conducted at the place specified in the will, while the other suggested turning over the fund to the trustees of another academy two or three miles away, in another part of the town. Neither side then sought a construction of the will which would result in the failure of the trust. In this situation the court very properly, and almost of necessity, decided in favor of the plan which permitted the gift to be applied for educational purposes in the place specified by the testator. Clearly this case is not an authority for the proposition that a trust must fail if it cannot be executed at the precise place specified in the will.

The first sentence of paragraph seven is clear and complete in itself. Its obvious purpose and effect is to create a public charitable trust, designed to benefit all children of high school age in the town. It provides the trust fund; it makes the town the trustee; it directs that the fund shall be kept intact and only the income expended; it clearly expresses the charitable purpose for which it shall be used. The provision that tuition shall be free to all scholars of the town over twelve years of age indicates the testator's intention to give his benefaction the widest possible distribution within its field. Here we have a complete outline of the testator's broad charitable plan.

The next sentence of the will contains two provisions which plainly have to do only with details of administration: the selectmen are to manage the fund and the treasurer is to be its custodian. Of similar import is the next sentence which directs where the school is to be kept. Neither the language used nor the context indicates that the testator regarded this provision as of cardinal importance, and it is properly to be regarded merely as a subordinate detail of his larger educational project, which was to assist "all scholars of the town over

twelve years of age" to obtain a high school education. The exact location provided for in the will does not seem to have been so important a consideration in his thought as the maintenance of a high school for the benefit of all the children of high school age in the town. It does not appear to have been an essential element of the benevolent purpose which he sought to accomplish. A similar conclusion was reached by the Massachusetts court in two cases where there were specific devises of land and gifts of money for the erection of charitable institutions thereon. *Weeks* v. *Hobson*, 150 Mass. 377; *Ely* v. *Attorney-General*, 202 Mass. 545. In these cases there was more reason for believing that the element of location bulked large in the minds of the testators than there is in the case at bar. The present school is located less than three-fifths of a mile outside of the area described in the will and in view of the changed conditions which have developed since the will was drawn, it is better fitted, in its present location, to accommodate "all scholars of the town over twelve years of age" than it would be if located within one hundred rods of the town house. Consequently the testator's purpose will be effectuated substantially in accordance with the provisions of the will if the income of the trust fund is expended for the maintenance of the existing high school.

We therefore conclude that this case comes within the scope of the well established rule "that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity; for equity will substitute another mode, so that the substantial intention shall not depend upon the formal intention." *Adams &c. Academy* v. *Adams, supra,* 226; *Keene* v. *Eastman, supra,* 193. A slight departure from the letter of the will in regard to the place where the charity is to be conducted is of no more consequence than a variation from the prescribed mode in which it shall be conducted. *Weeks* v. *Hobson, supra; Ely* v. *Attorney-General, supra;* 2 Perry, Trusts (2d *ed.*), s. 725.

The foregoing conclusion is based solely on the language of the will and the evidence of unquestioned admissibility. We find nothing in the testimony referred to by the trial court in his first alternative finding which would compel a different decision. Its net effect is in fact extremely dubious. If the testimony that the testator was a man of strong convictions, and that he had previously been involved in a controversy over the location of another schoolhouse, would tend to show that he meant what he said in regard to the place where the high school should be "kept," the testimony that he at first "wanted

to put in forty rods" but that when the scrivener said there might not be an available site in that distance, he agreed "to increase it to a hundred rods from the present Town House," would show that he had no disposition to insist upon an impossible site. The testator's statement, "That is near the center of the town and will accommodate the whole town" would strongly reinforce our conclusion in regard to his primary charitable purpose. If his remark in regard to the village of Salem Depot: "Well, if they want a separate school let them build it," indicates an intention which would preclude the use of the trust fund to maintain a school in that village, we are not confronted by that situation in the present case. It is therefore unnecessary for us to pass upon the admissibility of the above testimony. *Utley* v. *Titcomb*, 63 N. H. 129, 130. The prayer of the bill should be granted.

At the argument in this court, the defendants filed a motion that they be allowed a reasonable sum for counsel fees, briefs and travel, "from the fund, the disposition of which is now sought to be determined." This motion appears to be based upon a theory in regard to the apportionment of the expense of litigation which does not prevail here, and must, therefore, be denied. *Kimball* v. *Society*, 65 N. H. 139, 158–163.

*Decree for the plaintiffs.*

PEASLEE, C. J., was absent: the others concurred.