Grafton,
June 4, 1929.

ARTHUR H. DRURY & a., *Trustees, v.* PERLEY H. SLEEPER & a.

*Murchie & Murchie*, for the petitioners.

*James W. Remick*, for the defendants.

Snow, J. The bequest created a charitable trust. *Adams &c. Academy* v. *Adams*, 65 N. H. 225; *Keene* v. *Eastman*, 75 N. H. 191; *Borchers* v. *Taylor*, 83 N. H. 564. No question is made as to the authority of the town to act. G. L., c. 49, s. 7; P. L., c. 42, s. 18.

The gift was to the town, as trustee, in perpetuity. The provision naming the selectmen as custodians of the fund and distributors of the income was merely directory. It must be presumed that the testator had in mind officers of the town having legal authority to hold and administer such a trust whatever their successive official titles might be. Since the decease of the testator the custody, reinvestment and expenditure of trust funds held by cities and towns have, by legislative act, been imposed upon elective boards of trustees, who are subject to bond and limited in their investments. Laws 1915, c. 162, ss. 2, 3; P. L., c. 42, ss. 21, 22, 23. The transfer of the fund to the plaintiffs, as such trustees, was not a breach of any material condition of the gift. The change in the title and powers of the trust officers operated merely in affording a safer and more efficient medium of administration, and not in derogation of the trust.

The primary purpose of the trust is for keeping the designated cemetery "fenced" and "the Hearse House in good repair." There

is no claim that there has been any failure in the object, or any forfeiting default in the administration of the trust in this respect, and no advice is sought in regard thereto. The controversial issues presented and the requests for advice all relate to the surplus income beyond the annual requirements for such purposes. The disposition of such surplus is provided for as follows, "Whatever remains of said income not expended as above annually, at the expiration of each four years is to be expended for School purposes in School District where I now live. I order and direct that the Selectmen of said town of Alexandria have the control and custody of said Rail Road Stock and the power to draw and receive said incomb and expend it as above for said Town of Alexandria and said District —"

By act approved August 13, 1885, the division of towns into school districts theretofore existing was abolished and a town system of schools established by which each town was constituted a single district for school purposes. Laws 1885, c. 43, s. 1; P. L., c. 119, s. 1. The petitioners aver that because of this change they and their predecessors in office have been in doubt as to their legal authority to apply the unexpended balance, and inquire whether they may pay the same to the school district of Alexandria, and, if not, whether they may apply it to the general care of the cemetery which they assert is in a state of disrepair. The defendants, by answer, deny the right of the plaintiffs to make application of such balance to either of the suggested purposes for the double reason, as they allege, (1) that the object of the trust, in so far as applicable to school purposes, failed upon the abolition of the local district where the testator lived, and (2) that the trust has been forfeited by the neglect of the town to currently apply the accumulating balance of the income in accordance with the requirements of the will.

1. In appraising the effect of the abolition of local districts upon trusts the parties have evidently overlooked a saving clause in the act of 1885, and its interpretation in the codification of 1891. Section 7 of the abolishing statute read, "The provisions of this act shall not be applied to school districts holding funds for school purposes, in such manner as to prevent said districts from retaining and enjoying the benefit of said funds." This provision as incorporated in the revision of 1891, with verbal changes only (Comm'r's Report, 1891, c. 88, s. 24, p. 250), reads, "The corporate powers of a district [upon dissolution] shall continue for the purpose of . . . holding, managing, and enjoying any property held by it in trust, notwithstanding its dissolution; but the school board of the district of which it forms a part

shall be its agents to expend the income of any such trust property that is devoted to the support of schools." P. L., c. 119, s. 40. Laws 1885, c. 43, s. 4, provided that the duties theretofore performed by the "superintending and prudential committees," the governing bodies of the districts, should thereafter be performed by a town school board. It follows that, in so far as the continued existence of the local district as a governmental unit may be regarded as an essential factor in the administration of the trust, it must be considered that such district has never been abolished and is now represented by the school board of the town district of which it forms a part.

The political subdivisions of the state for governmental purposes are creatures of the legislature. Their form of government, within constitutional limits, is subject to modification without the consent of the individuals resident thereof. It must be assumed that the testator made his will in contemplation of such legislative changes therein as the requirements of the times should dictate. It was, therefore, within the presumed intent of the testator that the town school board, upon the adoption of the town system, should succeed to any duties which his will imposed upon the officers of the local district.

The gift, however, was not to the local district as a political school unit. The district was named primarily to define the territory for the benefit of whose school inhabitants the surplus income of the trust was bestowed (*Adams &c. Academy* v. *Adams, supra,* 227), and only incidentally (*Greeley* v. *Society,* 77 N. H. 455, 456) as a medium through which the testator's benefactions to them might be applied. The terms of the will leave a doubt as to whether it was the intention of the maker that the application of the income should be made by the selectmen directly, or through or by the direction of the officers of the district. Having in mind, however, the relative functions of the town trustees, and the town school board under the changed conditions, as well as to the relative duties of their respective predecessors under former conditions, it seems more consonant with the presumed intent of the testator that the income should be paid over by the trustees to the town school board and by it applied to the purposes of the trust, and it is so held and the plaintiffs are so advised.

While the conclusions here reached answer the specific requests of the plaintiffs, they leave unsettled the more difficult problem which will confront the school board in dispensing such income under the changed conditions. This problem has, therefore, been consid-

ered, and will be dealt with in so far as the limited facts reported will permit.

When, by reason of changed conditions, a charitable gift cannot be carried out in the precise mode prescribed by the donor, effect will be given to his general purpose, if legal, by adopting the method which seems to most nearly accord with his intention under the existing situation. *Keene* v. *Eastman*, 75 N. H. 191, 193; *Edgerly* v. *Barker*, 66 N. H. 434, 472; *Adams &c. Academy* v. *Adams, supra*, 226.

· The testator's general intent as respects the surplus income was to advance the interests of education in his section of the town. His more particular intent was that this should be accomplished by expenditures "in School District where I now live." Upon the dissolution of the multiple district system, the town school board was authorized to maintain schools in such places in the town as will best subserve the interests of education and afford as nearly equal advantages as practicable to the scholars in town. Laws 1885, c. 43, s. 6. It does not appear whether or not a school is maintained under the town system within the bounds of the ancient district accommodating substantially the same territory. If so, it would seem that the intent of the testator could be carried out with the least departure from the letter of his will by applying the income "for School purposes" in connection with such school. *Adams &c. Academy* v. *Adams, supra*, 225, 227. If, however, the changes in the location of the schools in town, and the areas from which the attendance is drawn, do not permit so close an approximation to the particular intent, the application of the income for school purposes in accordance with the general intent would not seem to present any insuperable difficulty. It cannot be inferred from any facts reported that the changes in the school system have destroyed all opportunity to advance the interest of education in the testator's section of the town. There is no suggestion that this area has been depopulated. If the general purpose cannot be effected through a school within the location of the old district it may be accomplished through the school or schools attended by inhabitants of the old district whether located in Alexandria or elsewhere.

It should perhaps be observed here that, in any event, the trust was not created for the benefit of taxpayers. It was not intended to relieve others from contributing their just share to the support and maintenance of the public schools, but to afford advantages in addition thereto. *Pembroke Academy* v. *School District*, 75 N. H. 408,

409. See P. L., c. 119, s. 41. The gift was for the benefit of the school population of the testator's district. *Borchers* v. *Taylor*, 83 N. H. 564. Their interest is paramount. The bestowal of scholarships or other aids (see *Pembroke Academy* v. *School District, supra*) to worthy boys and girls of the testator's district seeking an education may present the nearest approximation to the testator's general intent to advance the educational interest of his section; in which case the location of the school attended would be immaterial. It would not be profitable to speculate further as to the possible practical modes of effecting the testamentary purpose. The precise manner in which the expenditure can be made, in order most effectively to accomplish the object of the testator, presents a question which can be determined only upon consideration of the competent evidentiary facts, and these are not here reported.

There is no occasion to consider the plaintiffs' alternative suggestion that the surplus income be applied to general cemetery purposes, in support of which no convincing arguments have been presented. The court has no power to devise a new scheme for a charity so long as that devised by the donor may take effect. *Second Congregational Society* v. *Society*, 14 N. H. 315, 330.

2. It is averred in the answer that the trust was forfeited "for failure to expend the income as stipulated." In the absence of a brief, the defendants' claim is understood to be that the omission to expend the surplus income for any four year period worked a forfeiture under the terms of the last sentence of the seventeenth clause, namely, "And in the event said Town does not accept and expend the income as above stipulated, for the term of four years — I give & bequeath said Stock and income to my nephew William C. Kelly." The suggested construction is supported neither by the normal meaning of the language employed, nor by the apparent design of the testator disclosed by the whole clause.

The phrase "for the term of four years," given the interpretation naturally called for by the context and punctuation, qualifies equally the verbs "accept" and "expend." The acceptance contemplated must necessarily have been of the trust in its entirety and could occur but once. In its application to the acceptance of the trust, the expression "for the term of four years" must, therefore, have meant four years from the testator's decease. To adopt the construction claimed by the defendants would be to hold either that the phrase, contrary to the context, qualifies only the word "expend" or else to give it a double meaning according as it qualifies "accept"

or "expend"; namely, as qualifying "accept," the meaning of the term of four years from testator's decease, and as qualifying "expend," the meaning for any term of four years. The demerits of such a construction are apparent when we note the consequences which are made to follow by the express terms of the will. Upon the breach of the condition, "said Stock and income," and not merely the surplus income applicable to school purposes, passes to the nephew. The result would be that the validity of the principal object of the trust, cemetery purposes, would be made to depend upon the punctuality of the periodical expenditures of any contingent surplus. Had such been the intention, apt words would have been used. We have to conclude that the intention of the testator was merely to provide for a gift over in the event the town should not accept the trust and undertake to expend the income as stipulated in the bequest. It has done both. It was not the intention that mere delay or failure of administration in a minor particular should constitute a breach of the trust involving forfeiture.

The conclusions here reached are supported by the liberal construction accorded to charitable gifts (*Adams &c. Academy* v. *Adams, supra,* 226) and by the recognized principle that forfeitures for condition subsequent are not to be favored, particularly in the absence of express provision therefor. *Borchers* v. *Taylor,* 83 N. H. 564; *Keene* v. *Eastman,* 75 N. H. 191, 193; *Winslow* v. *Stark,* 78 N. H. 135, 137.

The general and indefinite averments in the answer that income has been applied to unauthorized purposes, and that the stock certificate has been lost, are not understood to be offered as independent grounds of forfeiture but as laying a basis for the defendants' prayers for an accounting and for the exhibition of the evidence of title. These averments are, therefore, of no direct bearing upon the issues here presented. If there has been any abuse of discretion the parties in interest have a remedy. *Winslow* v. *Stark, supra,* 138.

Upon return of the case to the superior court, the school board may appear and request further findings of fact, and advice as to the particular manner in which the surplus income may be best applied to accomplish the testator's intent.

*Case discharged.*

All concurred.