TOWN OF BOSCAWEN & a. v. ACTING ATTORNEY-GENERAL.

*Willoughby A. Colby* (by brief and orally), for the plaintiffs.

*Ernest R. D'Amours*, Assistant Attorney-General (by brief and orally), for the State.

PAGE, J. The material facts pleaded in relation to the principal cemetery trust fund indicate that Marilla M. Rines, who died in 1907, bequeathed to the town of Boscawen the sum of one thousand dollars, "the income thereof to be used to defray the expense of putting the lot, in which lie the remains of my late husband and other members of his family, in suitable and proper condition, and take care thereof and preserve the same in suitable and proper condition." The income and expenditures therefrom in each year since the acceptance of the trust by the town are set forth in the petition.

From the figures we derive the fact that in the first year of the trust the rate of income was four per cent, while in recent years it has been only two per cent. The expenditures averaged $26 a year for the first five years, while in the last five years the average was $35. During the first five-year period there were very unusual expenses in 1911, but no such expenditure in the last five years increases the average of $35. These figures are consistent with the common knowledge that during the period of the trust, savings bank dividend rates have been at least cut in two, while labor costs have increased markedly. This trend is fully apparent during the years from 1930 to 1943 inclusive, when the payments exceeded the income by $121.12.

Analyzing the figures further, it appears that the unexpended income at the end of 1943 ($432.32) has been almost steadily reduced since 1929, when the accumulation stood at $619.69. This maximum accumulation was apparently built up by returns in the years 1910 to 1915 inclusive that ranged annually from about seven and a half per cent to approximately fourteen per cent, also by a thoroughly abnormal yield in 1929 of over seventeen per cent. There is no evidence that any of these large annual accretions will ever be matched, or even approached, in the future.

In this situation, the plaintiffs desire to use the accumulated income for general purposes in other parts of the cemetery in which the Rines lot is situated. They assume that the accumulation will never be required for the Rines lot, and argue that the suggested use is a proper application of the *cy pres* doctrine. That doctrine is applied where the particular purpose of the creator of a trust is "impracticable" of operation (*Second &c. Society* v. *Society*, 14 N. H. 314, 330; *Adams* v. *Page*, 76 N. H. 96, 97), or where it "cannot take effect" (*Edgerly* v. *Barker*, 66 N. H. 434, 467; *Gagnon* v. *Wellman*, 78 N. H. 327, 328), or where it is "impracticable, if not impossible" (*Keene* v. *Eastman*, 75 N. H. 191, 193).

The purpose clearly expressed by Mrs. Rines is that the income shall be used for the care of the Rines lot; nothing else is even suggested. Even though it appears vaguely that "a certain portion" of the income of her fund has heretofore been diverted "to improve the general appearance of the Plains Cemetery," we have no means of ascertaining how much that indefinite amount has reduced the accumulation of income. On the other hand, the facts before us indicate clear tendencies that could sustain the belief that the accumulation may well disappear at some time in the future, even if applied solely to the particular purpose of the testatrix, with the result that a probable annual income of $20 on $1,000 would then be no more than sufficient, if even sufficient, for normal care of the Rines lot and the more than normal demands that seem in the past to have arisen periodically. In any event, the facts presented by the pleadings are far from showing the impossibility, or even the impracticability, of using the accumulated and future current income, as the testatrix desired, on the Rines lot and nothing else.

The town has also accumulated income of $800 in forty-nine other cemetery trust funds which it desires to expend "by cutting the grass and weeds over the entire cemetery at least once a year, by straightening certain headstones, by pruning shrubs and trees and by repairing and grading driveways, funds for doing which are now lacking." No facts are alleged to show the provisions of the several trusts, or the impossibility or impracticability of devoting the accumulated income and future accretions to the purposes prescribed by the donors. The present lack of funds for general cemetery purposes affords no shadow of claim for a right to make the diversion sought for. If the expenditures proposed are desirable, the town has the means to provide for them under the taxing power. R. L., c. 51, s. 4 (XV).

*Case discharged.*

MARBLE, C. J., was absent: the others concurred.