# IN THE MATTER OF THE TRUST ESTATE CREATED UNDER DEED OF TRUST OF CAROLINE WEST MILLER DATED JULY 7, 1939.

## No. 4378.

December 8, 1964.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

Bishop Trust Company, Limited, the Successor Trustee of the Caroline West Miller Trust, filed on July 6, 1962 a petition for instructions in the lower court as to the proper distribution of trust income.

The trust instrument provided that the net income of the trust should be paid to those surviving, from time to time, of six named grandchildren and of the legal issue of any of said grandchildren who should be dead, such issue taking per stirpes by right of representation. The trust instrument further provided that any of the beneficiaries might permanently and completely withdraw the then present value of his interest in the trust or that the trustee in its discretion might make certain advances out of principal to the beneficiaries of the trust estate.

The particular provisions are as follows:

"Any beneficiary upon being entitled to receive a life annuity pursuant to this trust may withdraw the present value of his or her life annuity in said trust estate computed on the basis of the American Experience Tables of Mortality at two per-cent which shall herein be referred to as the 'Withdrawal Value'. Upon withdrawal as aforesaid, such beneficiary or his or her executors, administrators, heirs, assigns, issue or descendants shall not be entitled to the proceeds or to any further benefits of this Trust.

\* \* \* \* \* \* \* \* \*

"The Trustees shall have authority and at their discretion to advance to any beneficiary of the trust estate here named, from the principal under his control a sum or sums to be determined by said Trustees (the total advancement to the withdrawal by any beneficiary not to exceed however the then withdrawal value of such beneficiary in this trust estate), and charge the same to the account of such beneficiary either [1]

by reducing the interest of such beneficiary in the trust estate by the amount of advancement or advancements withdrawal or withdrawals, or [2] by deducting the amount of such advancement or advancements withdrawal or withdrawals from the share of such beneficiary upon his or her withdrawal from the trust estate or [3] by deducting the amount of such advancement or advancements withdrawal or withdrawals from the income to which the beneficiary is entitled, pursuant to election of said Trustees, provided, however that if at any time the total advancement or advancements, withdrawal or withdrawals by any beneficiary of this Trust shall equal the then withdrawal value to which such beneficiary is entitled, then such beneficiary or his or her executors, administrators, heirs, assigns, issue or descendants shall cease to have any interest in this trust estate."

On July 20, 1961, Charles Crockett, one of the named grandchildren, requested and secured a payment from the trustee of $37,431.91 from the principal of the trust. The trustee treated this as a permanent withdrawal.

Charles Crockett was 39 years of age on July 20, 1961, and his full withdrawal value of one-sixth of the principal in the trust determined on the basis of the American Experience Tables of Mortality at two per cent, as indicated in the trust instrument, was $41,750.50, as compared with the value of one-sixth of the principal of the trust estate on that date, to wit, $99,071.87; the total value of the trust estate then being $594,431.23.[1] Charles Crockett died on February 7, 1962, leaving two children surviving him, whose guardians ad litem are the appellants herein. The other five grandchildren are presently surviving and

---

[1] At the time of the partial withdrawal of principal by Charles Crockett, there was $594,431.23 in the principal of the trust, which if divided by the six grandchildren will amount to $99,071.87.

are appellees herein together with the guardians ad litem of their minor children.

Charles Crockett's withdrawal of $37,431.91 from the principal of the trust, if deducted from $99,071.87, one-sixth of the principal of the trust, will leave a net principal of $61,639.96. The guardians ad litem for the children of Charles Crockett contend that they should be paid 6163996/55699932[2] of the income from the trust and that the other five grandchildren should each receive 9907187/55699932 of the net income of the trust.

The five surviving grandchildren and the guardians ad litem of the minor children of the surviving grandchildren contend that the children of Charles Crockett should be paid 431859/4175050 of one-sixth of the net income of the trust[3] and the balance thereof paid in equal shares to the five surviving grandchildren.

In their computation, the appellees subtracted the amount of $37,431.91 withdrawn from the principal of the trust from $41,750.50 which was the total permanent withdrawal value of Charles Crockett's life annuity on July 20, 1961 determined on the basis of the American Experience Tables of Mortality at two per cent. Their computation allowed Charles Crockett's issue the income from such part of a one-sixth share as constituted the ratio of this remainder of Charles Crockett's withdrawal value to the total of said withdrawal value.

On March 8, 1963, the lower court entered judgment instructing the trustee that "the legal issue of Charles Crockett are entitled to receive 431859/4175050 of the share of the net income which Charles Crockett would have been entitled to receive if living at the time and if

---

[2] After the withdrawal of $37,431.91, the remaining principal totaled $556,999.32.

[3] For this purpose the net income would be computed as if there had been no withdrawal.

there had been no reduction or waiver of his interest in the trust; namely, at the present time, 431859/4175050 of one-sixth of the income." "The remaining net income from and after February 7, 1962 during the continuance of the trust shall be equally divided between those who shall be surviving from time to time" of the presently surviving grandchildren (five) and "the issue of any of them who shall be deceased, such issue to take per stirpes by right of representation."

The sole question involved in this appeal is what fractional share of the net income of the trust became payable to the legal issue of Charles Crockett and to the five other surviving grandchildren on the death of Charles Crockett.

In arriving at the percentage 431859/4175050 of one-sixth of the net income of the trust, the lower court decided that the formula provided in the trust for determining the amount of a beneficiary's complete permanent withdrawal value was applicable, by necessary implication, to determine the amount of reduction of the beneficiary's interest in the trust when there was a partial withdrawal. We do not agree.

In its first withdrawal provision, the trust instrument clearly provided that any beneficiary may withdraw the present value of his or her life annuity in said trust estate computed on the basis of the American Experience Tables of Mortality at two per cent and upon withdrawal as aforesaid, such beneficiary or his or her executors, administrators, heirs, assigns, issue or descendants, shall not be entitled to the proceeds or any further benefits of this trust. There was no discretion allowed the trustee with reference to this withdrawal provision.

However, in the second withdrawal provision, the trustee had the authority, at its discretion, to advance to any beneficiary of the trust estate from the principal under its control, a sum or sums to be determined by said

trustee and charge the same to the account of such beneficiary, either by reducing the interest of such beneficiary in the trust estate by the amount of advancement or advancements, withdrawal or withdrawals, or by deducting the amount of such advancement or advancements, withdrawal or withdrawals, from the income to which the beneficiary is entitled pursuant to election of said trustee.[4]

We find no language in the trust instrument to charge the partial withdrawal of Charles Crockett in the manner determined by the lower court wherein his interest in the trust estate was penalized by reducing it to a fraction far out of proportion to the amount that remained in the estate from which he was receiving the net income. The trust document is clear that the trustee shall charge the account of the beneficiary by reducing the interest of such beneficiary in the trust estate by the amount of withdrawal. No reference is made in this partial withdrawal provision to the formula prescribed for permanent withdrawals.

The trustee had two alternatives. Under the first alternative it could, without in any way prejudicing the interest of the other beneficiaries, deduct the amount withdrawn from one-sixth of the principal and pay the income from the remaining portion of one-sixth of the principal to that beneficiary or, in this case, to his children. Second, it could deduct the amount of withdrawal from the income which the beneficiary was entitled to receive until recoupment was effected of the full amount of advancement from principal.

When we consider the first alternative which was employed by the trustee, together with this statement in the trust instrument, "The Trustees shall have authority and at their discretion to advance to any beneficiary of the

---

[4] The third possibility, *i.e.*, deduction from the beneficiary's share upon his withdrawal, has no pertinence here.

trust estate here named, * * *" it is apparent that if the judgment of the lower court is correct, the action of the trustee may be subject to attack as an abuse of discretion, since it advanced such a large sum and determined that such advancement was a permanent withdrawal.[5] It is the duty of the trustee to treat all beneficiaries equally. *Rhode Island Hospital Trust Co.* v. *Tucker,* 52 R.I. 277, 160 Atl. 465; *Pabst* v. *Goodrich,* 133 Wis. 43, 113 N.W. 398; 54 Am. Jur., *Trusts,* § 320.

The injustice of the judgment below can be more readily observed by the following example. Let us assume that Charles Crockett was 65 years of age at the time and decided to withdraw the sum of $10,000. The trustee decides to treat this advancement as a permanent withdrawal. Instead of paying him 8907187/58443123 of the net income,[6] the trustee, would have to first establish the withdrawal value of one-sixth of the principal by the American Experience Tables of Mortality at two per cent, which because of his advanced age, may be just about equal to the amount withdrawn. And, thereafter, Charles Crockett or his children would share in a minor fraction of the one-sixth of the net income, with the remainder of the net income divided equally among the other five grandchildren.

In view of the failure of the settlor to indicate the method by which the beneficiary's interest is to be reduced in the event of partial withdrawal as contrasted with the provision in case of full withdrawals, we have two possible interpretations, one which leads to a severe penalty to Charles Crockett or his surviving children and the other which avoids it.

---

[5] The discretion of the trustee is not an issue in this proceeding.

[6] The principal share of each beneficiary was $99,071.87. $99,071.87 less $10,000 is $89,071.87. The principal of the entire trust was $594,431.23. $594,431.23 less $10,000 is $584,431.23.

As stated in *Ballard* v. *MacCallum,* 15 Cal. 2d 439, 444, 101 P.2d 692, 695, "* * * the policy and rule are settled, both in the interpretation of ordinary contracts and instruments transferring property, that the construction which avoids forfeiture must be made if it is at all possible. (See *Hawley* v. *Kafitz,* 148 Cal. 393, [83 Pac. 248, 113 Am. St. Rep. 282, 3 L.R.A. (N. S.) 741]; *Henck* v. *Lake Hemet Water Co., supra* [9 Cal. 2d 136, 69 P.2d 849]; Restatement, Property, sec. 45, comment i.)" *Brant* v. *Bigler,* 92 Cal. App. 2d 730, 208 P.2d 47. Equity will not imply a provision for penalty or forfeiture where none is expressed. *Borchers* v. *Taylor,* 83 N.H. 564, 145 Atl. 666. Doubt or uncertainty in the provisions of trust documents will be resolved most favorably to the beneficiary. *Title Ins. & Trust Co.* v. *Duffill,* 191 Cal. 629, 218 Pac. 14; *In re Greenleaf's Estate,* 101 Cal. App. 2d 658, 225 P.2d 945.

The interpretation given by the lower court results in a severe penalty to the surviving children of Charles Crockett. Originally, each of the six grandchildren was entitled to one-sixth or 16 2/3 per cent of the income from the trust. The new fraction of 431859/4175050 equals 10.344 per cent. 10.344 per cent of 16 2/3 per cent of the income of the trust will give to the surviving children of Charles Crockett only 1.723 per cent. On the other hand, the five surviving grandchildren will receive a total of 98.277 per cent, or 19.655 per cent each of the remainder of the income. The theory of necessary implication as used by the lower court penalized the minor children of Charles Crockett and the appellees were given a windfall, which in this instance amounts to 2.989 per cent each of the net income or a total of 14.945 per cent.

Not only should a penalty not be implied where none is expressed, but also the provisions as to permanent withdrawals and partial withdrawals are not in conflict

and there is no room for implication for that reason. The permanent withdrawal provision governs the case where the beneficiary proceeds without submitting himself to the discretion of the trustee. He can proceed though the trustee is in disagreement, but only by completely withdrawing at enormous cost not only to himself but also to his issue. If, on the other hand, he submits himself to the discretion of the trustee and secures the trustee's agreement he need not withdraw completely or incur the heavy penalty incident to a complete withdrawal. There is no justification for supposing that the settlor intended this heavy penalty to apply when there was no need thereof, the trustee's discretion being itself a curbing influence.

We hold that under the provisions of the trust document, the surviving children of Charles Crockett are entitled to 6163996/55699932 or 11.0665 per cent of the net income of the trust and the other surviving grandchildren 9907187/55699932 or 17.7867 per cent each of the net income of the trust.[7]

Reversed and remanded for entry of judgment in conformity with this opinion.

*John E. Parks,* Guardian Ad Litem for John Michael Crockett, appellant.

*Robert M. Rothwell,* Guardian Ad Litem for Charmaine Crockett, appellant.

*James M. Richmond (Anderson, Wrenn & Jenks)* Guardian Ad Litem for certain defendants-appellees.

---

[7] See footnote 1.