## RUSHING, County Clerk, v. THOMAS.

### No. 4160.

Court of Civil Appeals of Texas. Amarillo.

Sept. 6, 1933.

Perry T. Brown, of Farwell, for appellant.

J. D. Thomas, of Farwell, for appellee.

HALL, Chief Justice.

The appellee, Thomas, as attorney for M. M. Wilson, recovered a judgment in the county court of Parmer county against George W. Hart and others in the sum of $131.64. Hart paid the amount of the judgment to the appellant, Rushing, who is and was at the time county clerk of said county, and also paid the costs which had accrued in the justice court, together with costs which had accrued in this court upon appeal from said judgment. Thereafter the appellant, Rushing, paid the plaintiff in said judgment, M. M. Wilson, the amount of the judgment rendered in the latter's favor, by delivering the funds to John Wilson, the brother of said plaintiff, upon the request of the latter. M. M. Wilson then left the state and moved to Oklahoma. The appellee, Thomas, claiming that he had a one-third interest in the amount of the recovery, requested Hart and his co-defendants to pay him $47, the amount claimed as attorney's fees. Rushing had previously paid the amount of the judgment to plaintiff's brother, and upon Hart's failure to pay Thomas the $47, the latter requested Rushing as county clerk to issue an alias execution for the collection from the defendants in the judgment of the amount claimed by him as his one-third interest. Upon the failure and refusal of Rushing to issue the execution, Thomas brought this proceeding in the county court of Parmer county, praying for a writ of mandamus against the said Rushing, requiring him to issue the execution as requested. In his petition he sets out the facts that as attorney for M. M. Wilson he recovered a judgment against Nelson Gunn and George W. Hart in the sum of $131.64 in favor of plaintiff, Wilson, which was appealed to the Court of Civil Appeals of the Seventh District, where the judgment was affirmed [Hart v. Wilson, 53 S.W.(2d) 1029] and mandate duly issued. Thomas further alleges that he had an agreement with his client, Wilson, that as attorney his "compensation should be one-third of the amount of the judgment recovered," that he is entitled to a one-third interest in the judgment and has requested the said clerk to issue an execution, and that said clerk has failed and refused to do so. That M. M. Wilson is wholly insolvent and is no longer a resident of the state of Texas and has refused to pay him any attorney's fees for the services rendered.

Rushing answered, alleging in substance that the judgment which was rendered in Wilson's favor against Hart and others does not show that relator had any interest whatever therein; that the records in the office of the county clerk do not disclose the existence of any contract between Thomas and Wilson; that as clerk he received a check from George W. Hart for the sum of $167.69,

being the amount of the judgment plus the costs in the justice court and in the Court of Appeals; that John Wilson, the brother of M. M. Wilson, came to his office and represented that M. M. Wilson had sent him to collect the amount of money due him under the judgment, and after ascertaining the amount of the judgment and costs, the sum of $92.59 was delivered to the said John Wilson, the brother and agent of the plaintiff M. M. Wilson, and that he further paid the costs in the Court of Appeals in the amount of $31.05, and that through an error in the calculation of costs, the sum of $17.55 additional was due plaintiff, which is now in his possession as clerk and which he is ready to deliver to plaintiff or his attorney, Thomas, as the court may decree.

Thomas testified that he had a contract with M. M. Wilson in virtue of which he was to represent Wilson in his suit and that his fee "would be one-third of the amount of the recovery, which fee was to be paid upon the recovery of the judgment."

In rendering a judgment for Thomas, the court recited the following finding of fact: "The Court further finds that the defendant George W. Hart had notice of relator's interest in and to said judgment prior to the time that any settlement or attempt at settlement was made with the plaintiff M. M. Wilson." The appellant challenges the sufficiency of the evidence to support this finding.

After carefully reviewing the statement of facts, it is our opinion that the evidence is insufficient to show that either Hart or Rushing had notice that Thomas claimed an interest in the amount of the recovery or in the amount of the judgment. The only testimony upon the issue is from J. D. Thomas, as follows: "After the Supreme Court denied the writ of error, Mr. Brown [Hart's attorney] came to me stating that he had noticed in the Dallas News that a writ had been denied and asked me if the judgment could be paid off in monthly installments. In answer to him I stated that we would not agree to the judgment being paid off in that manner. We would insist that it be paid off in a lump sum. On another occasion Mr. Brown came to me and asked me again if I would not write my client and ascertain if the judgment could not be paid in monthly installments. In answer to Mr. Brown I stated that I would not write my client to do that because I would not agree to it and again on this occasion I stated that we (and here I emphasized the pronoun we) wanted the judgment paid in a lump sum. On this particular occasion I informed Mr. Brown that I would not even write the letter asking my client to do this. After I learned that the writ of error had been denied by the Supreme Court, I wrote to my client Wilson, who now lives in Oklahoma, and informed him that

the judgment had been affirmed and that I ought to have in my hands within a few days a check in settlement of the judgment and suggested to him that inasmuch as I had had to do more work than was originally contemplated, that he agree that I be allowed to retain one-half of the amount of the recovery. I have had no reply from Wilson in answer to that letter. * * * Subsequently I wrote to M. M. Wilson, who now lives in Nash, Oklahoma, and asked him to settle with me on the one-third basis, explaining to him fully what had taken place and that there was a balance of $17.55 still in the hands of Mr. Rushing. In fact, I have written him two letters but I have heard nothing from him."

There is no further testimony which tends to show that either Hart or Rushing had any notice whatever that Thomas claimed any interest in the judgment.

The rule is that in the absence of a special statute giving him authority or order of court to that effect, a clerk has no authority to collect or receive money due upon a judgment, and payment to the clerk in the absence of such authority is not a satisfaction unless he was the agent of the judgment creditor. 26 Tex. Jur. 493, § 635.

In receiving the money from Hart, Rushing did not act in his official capacity, but merely as the agent of Hart to transmit the funds received by him to Wilson. There was no assignment of any interest in the claim or the judgment filed showing that Thomas had any interest therein, and, in fact, that issue has never been adjudicated. While he testified that he was entitled to one-third of the recovery, we must assume from the fact that Wilson collected $92.59 of the judgment and, although he has received two letters from Thomas, has not paid the latter any amount thereof or even made reply to the requests of Thomas, there is a question as to the amount due Thomas.

The rule in a mandamus proceeding, as clearly stated in Ferris' Extraordinary Legal Remedies, 228, § 194, is as follows: "Relator, to be entitled to the right, must at least have a clear legal right to the performance by respondent of the particular duty sought to be enforced, that is, there must be a clear legal right in relator and a corresponding duty on the part of the person to whom the writ is directed. No intendments are to be indulged. Relator must by averment and proof show an unqualified right to the writ. * * * Absent any clear legal right of relator which it is the duty of respondent to grant, there is no substantial resting place upon which to base the application, for in its final analysis the question for determination is whether the right of the aggrieved party is so free from doubt and the duty of the officer so clear and free from any

substantial question that an order should issue to compel performance. The office of mandamus is to execute, not adjudicate. It does not ascertain or adjust mutual claims or rights between the parties. If the right be doubtful, it must be first established in some other form of action. Mandamus will not lie to establish as well as enforce a claim of uncertain merit. It follows, therefore, that mandamus will not be granted where the right is doubtful."

██ The only legitimate inference to be drawn from the fact that Wilson has collected the whole of the judgment and has not paid Thomas any part of it is that Wilson does not agree that Thomas is entitled to recover the full $47. If this be true, the clerk was not authorized to issue an execution to collect that amount and might have subjected himself to an action for wrongfully doing so. Wilson has not been made a party to this proceeding, and even if he were a party and his liability to Thomas for one-third of the judgment could be adjudicated in this action (a question which we do not decide), Rushing would not be authorized to issue an execution until after the rights of Thomas and Wilson had been settled.

In the case of Taliaferro v. Hale (Tex. Civ. App.) 47 S.W.(2d) 340, 341, it is said: "As was clearly stated in the case of Boone v. McBee, Clerk [(Tex. Civ. App.) 280 S. W. 295], supra: 'If there is a dispute in the facts, or if the conclusions to be drawn therefrom are the subject of substantial dispute, the action of the county judge is final.' * * * The rule is plainly settled that mandamus will lie only to compel officials to perform duties which result from the office and expressly enjoined by law as absolute and official."

It is said in Holcomb v. Robison, 118 Tex. 395, 15 S.W.(2d) 1027, 1028: "It is clearly apparent that the pleadings present an issue of fact necessary to be determined by a court of competent jurisdiction, in order that the lawful rights of the relator may be ascertained with respect to this land. Relator alleges the land is a part of the public domain, belonging to the unappropriated public free school fund. Respondents allege it is private property, the title to which is evidenced by a valid patent. Mandamus will not issue to compel a public officer to perform an official act unless the complaining party shows a clear right to such performance and a clear duty to perform by the officer. Neither the right nor the duty can be thus shown, where an issue of fact is raised by the pleadings, duly authenticated."

To the same effect is Kemp v. Wilkinson, 113 Tex. 491, 259 S. W. 912, and Winder Bros. v. Sterling, 118 Tex. 268, 12 S.W.(2d) 127, 14 S.W.(2d) 802.

If it appears that the rights of some person not before the court are undetermined or will be affected by the issuance of the writ, it should not issue. Commissioner v. Smith, 5 Tex. 471; Teat v. McGaughey, 85 Tex. 478, 22 S. W. 302.

It appears from the face of this record that the issuance of this writ will affect not only M. M. Wilson, the plaintiff in the original judgment, but also the defendants Hart, Gunn, and others, none of whom have been made parties to this proceeding. Until they had legal notice of the proceedings and an opportunity was given them to be heard, the court was without jurisdiction.

The issuance of the writ, under the circumstances, presents fundamental error, and the judgment is reversed, and the cause is dismissed.