Kyle COOK et al., Appellants,

v.

Dalton HAMER et al., Appellees.

No. 15236.

Court of Civil Appeals of Texas.

Dallas.

May 3, 1957.

Rehearing Denied May 31, 1957.

C. C. Renfro, Dallas, for appellants.

Johannes & Kelsoe, Dallas, James W. Batchelor, Durant, Okl., for appellees.

CRAMER, Justice.

This suit involves the title to 40 acres of land owned by Josephine Cook in her lifetime. In June 1942, Josephine Cook made and duly executed a will leaving her estate (after payment of debts) as follows: All personal property to her nieces and nephews, Mary Hamer, Cornelius Hamer, Burch Hamer, Dalton Hamer, Raleigh Hamer, Florence Wylie, and Marie Grimes; a 40-acre tract of land in the T. L. Chenoweth Survey in Dallas County to her brother Henry Cook; 53½ acres of land (two tracts of 26⅔ acres each) in the M. C. J. Bays 320-acre Survey in Collin County to her brother J. W. Cook; the south one-half of an 80-acre tract in the Mack J. Bays 320-acre Survey including improvements thereon to her brother Wesley Cook; to her nieces and nephews (not naming them) the north one-half of the 80 acres in the Mack J. Bays Survey described in deed from Jacob H. Cook et al to her, and providing that if any of the above parties predecease her, leaving child or children or their descendants, such survivor shall take the property willed to his or her father or mother, and that if any of such nieces or nephews die without leaving surviving child or children or their descendants, then their portion shall vest in those nieces and nephews who survive such deceased niece or nephew, share and share alike; that in case either of her named brothers predecease her, leaving surviving child or children or their descendants, then their portion shall vest in such surviving child or children or their descendants. She appointed her brother Henry Cook Independent Executor and provided no action in Probate Court be had on her estate.

Miss Cook survived all her brothers and when she died on July 18, 1954, she was survived by nineteen nieces and nephews.

Her will was filed for probate September 20, 1954 in Collin County and administration was pending when this suit was filed by fourteen of her nieces and nephews, in which suit the other nieces and nephews are defendants.

Appellants here are the children of Henry Cook; appellees are the children of Miss Cook's sister and her other two brothers.

On trial in the District Court the jury found: (1) That Josephine Cook, testatrix, by her will of June 4, 1942, intended to divide her estate into four equal parts; (2) Josephine Cook, in designating specific parcels of land to the devises named, used this means of effecting an equitable four-way division of her property; (3) that the sale of four tracts of land by the guardian of Josephine Cook had the effect of nullifying her intent to so divide her property into four equal parts; (4) that Marlin Cook, individually and as representative of his brother and sisters, appeared at a meeting in the Collin County Judge's office about February 10, 1953; (5) that there was a mutual agreement between plaintiffs and defendants or their authorized representatives on February 10, 1953 in the office of the County Judge of Collin County to sell the five tracts of land of Josephine Cook; (6) that except for such agreement plaintiffs would not have refrained from contesting said application and order of the court to sell said land; (7) that it was the intention of both plaintiffs and defendants or their authorized representatives by virtue of their agreement to create with her entire property a general fund for the care and support of Josephine Cook during her lifetime; (8) as a part of such agreement the balance of the property remaining after her death, after debts were paid, was to be divided into four equal parts for distribution to her devisees; (9) that $43,733.25 was spent for the care and benefit of Josephine Cook from the sale of four tracts of land belonging to her; (10) that $2,527.77 was spent for the care and benefit of Josephine Cook from the proceeds of the sale of personal property belonging to

her; (11) that Marlin and Kyle Cook appeared at the meeting on or about July 20, 1954 in Roland Boyd's office in Collin County as the authorized representatives of their sisters, Romaine Abbott, Gracie Abbott, and Jewell Lewis; (12) that the plaintiffs and defendants or their authorized representatives on or about July 20, 1954 made an oral agreement to waive the provisions of the will and divide the entire estate into four equal parts; and (13) that Marlin and/or Kyle Cook agreed on or about September 6, 1954, individually and as the authorized representatives of their three sisters, to divide the property into four parts and waive the provisions of the will, provided a written agreement to said effect was signed and duly acknowledged by plaintiffs and delivered to Roland Boyd on or before October 14, 1954. On such verdict and the evidence the trial court entered the judgment here appealed from and appellants have duly perfected this appeal, briefing eighteen points of error.

■ Points 1, 2 and 3, briefed together, assert (1) the evidence is insufficient to support the jury finding that Josephine Cook intended to make an equitable four-way division of her property; (2) the jury findings to issues 1, 2, and 3 are insufficient to support the judgment; and (3) the court erred in submitting questions of law to the jury in issues 1, 2, and 3. Appellees counter that (1) intent was an issue for the jury and the jury findings are supported by the evidence; (2) the evidence is sufficient to support the jury findings, and the trial court properly admitted Exhibits 6, 10, 21, 22, and 23; and (3) the trial court properly admitted into evidence appellees' tender. It is now settled that courts can construe the will, first, by ascertaining the true intention of the testator from the four corners of the will itself and cannot reform it or correct the plain wording of the will by adding to or taking from such wording in the will any addition to the true intent of the testator where the identity and disposition of the property is plainly stated therein. Jackson v. Templin, Tex.Com.

App., 66 S.W.2d 666, 92 A.L.R. 873; City of Haskell v. Ferguson, Tex.Civ.App., 66 S.W.2d 491; Jones v. Hext, Tex.Civ.App., 67 S.W.2d 441; Pinkston v. Pinkston, Tex. Civ.App., 81 S.W.2d 196; Lake v. Copeland, 82 Tex. 464, 17 S.W. 786; Hassell v. Frey, 131 Tex. 578, 117 S.W.2d 413; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Neely v. Brogden, Tex.Com.App., 239 S.W. 192.

■ The only question here is whether the will plainly expressed an intention on the part of the testatrix to divide her estate into for equal shares with the intention of specific items only for the purpose of being used as a general guide to effect an equitable four-way division rather than as specific devises to the four named beneficiaries. From the authorities we conclude that intent is a mental attitude made known by acts. It is an operation of the mind which in a given case is proved and found as a fact and ordinarily is not found as a matter of law and in our opinion here could not be found as a matter of law. The witness Grimes testified the deceased made the statement to him that "she divided it into four equal parts the best she knew how." Witness Miss Neal Wylie testified the testatrix told her how she had divided the land, in substance that she divided it "just as near equal as she knew how." That she attended the meeting in Mr. Boyd's office when the will was read; that they talked and agreed for it to go four ways "just like she had"; that Kyle and them were vouching for their sisters" and "they agreed to go four ways."

Under such record, points 1, 2, and 3 must be and are overruled.

Points 4 to 7 inclusive, briefed together, assert error (4) that the evidence is insufficient to support the jury's findings that on February 10, 1953 the nineteen nieces and nephews of Josephine Cook made an agreement for the Probate Court to sell all of their land and that appellees would have contested the sale of any of the land if such an agreement had not been made;

(5) that findings on issues 4 and 8 are insufficient to support the judgment awarding ¾ths of the land to appellees; (6) in submitting special issue No. 8 in the language used; and (7) in overruling appellants' objections to issues 4 to 8 in the charge. Appellees counter that these points as well as points 8 to 14 inclusive and point 18 that the evidence is sufficient to support and the court properly admitted Exhibits 6, 10, 21, 22 and 23. The sufficiency of the evidence is the only question raised here as to the submission and findings or answers of the jury on the issues named. The record shows the parties by stipulation agreed, material here, that Josephine Cook made a will June 4, 1942 and that at that time she was in good health and of sound mind; that she thereafter became ill and on March 7, 1952 Ed Funderburgh was appointed her guardian; that thereafter on April 19, 1952 the guardian made application to the County Court to sell the five tracts of land owned by Miss Cook. In February 1953, the attorney for the guardian notified the four groups of legatees· to be present on the proposal to sell all the real estate, and at the meeting told them all five tracts must be sold in order to break the will, and disclosed to them the contents of the will. Thereafter representatives of the four groups met and agreed to sell all the land "in order to break the will" and that thereafter all debts would be paid· and the money would be divided four ways by the County Court. Thereafter the County Court ordered the five tracts of land sold. Pursuant to this order four of the tracts had been sold by July 18, 1954, leaving one tract of 40 acres which had not yet been sold when Josephine Cook died. This one remaining tract of land is the subject of this suit.

■ Under such record the parties merely agreed that the will be set aside and a distribution of the estate under the laws of descent and distribution, and since all heirs and co-owners were parties to the agreement either in person or by authorized representatives and such agreement having been carried out, it was not subject to attack

except for equitable reasons not set out here; also that the property under such agreement was, after the terms of the agreement had been carried out, owned by the nieces and nephews in the agreed portions. Such evidence in our opinion preponderating in favor of appellees was sufficient to support the jury verdict and the trial court's judgment. Collett v. Collett, Tex.Civ.App., 217 S.W.2d 60; Underwood v. Security Life, etc., 108 Tex. 381, 194 S.W. 585. It is also well established that where all the necessary parties agree that they lawfully compromise their differences by an agreement not to probate the will. Wade v. Wade, 140 Tex. 339, 167 S.W.2d 1008; Stringfellow v. Early, 15 Tex.Civ.App. 597, 40 S.W. 871; Parriss v. Jewell, 57 Tex.Civ.App. 199, 122 S.W. 399; Shell Petroleum Corp. v. Railroad Commission, Tex.Civ.App., 116 S.W.2d 439; McDonald v. McDonald, Tex.Civ.App., 143 S.W.2d 142; 44 Tex.Jur., sec. 211, pp. 777–778.

In passing on the sufficiency of the evidence to support the verdict we should consider only that evidence which supports the verdict, disregarding all other evidence. So considered, the record supports issues 4 to 8. Points 4 to 7 inclusive are overruled.

Points 8 and 18 assert, (8) fundamental error in awarding title to ¾ths of the land to appellees because the contract asserted by them was an oral proposal which contemplated conveyances of interests in land which were not enforceable under the statute of frauds; and (18) error in overruling appellants' motion for judgment n. o. v. Countered that the evidence was sufficient to support the jury's findings and the admission of Exhibits 6, 10, 21, 22 and 23. The will and the evidence is to the effect that the property shown in the will as directed by the testatrix was divided into four portions and the property in each of such four portions separately is of the approximate value of each of the other portions. The evidence of the statement of the testatrix

that she tried as best she could to divide it into four equal parts of equal value, is material here. Our search of the record does not disclose the evidence that it was contemplated under the will that conveyances were to be made supplementing the will. Points 8 and 18 are overruled.

Points 9 and 10 assert error, (9) that the evidence is insufficient to support the jury's findings to the effect that about July 20, 1954 appellants and appellees made an oral agreement to waive the provisions of the will and divide the estate into four equal parts; and (10) findings to issues 11 and 12 are insufficient to support the judgment awarding ¾ths of the land to appellees, to Dalton Hamer et al. Countered by appellees, material to these points, that the evidence is sufficient to support the jury findings and the trial court properly admitted Exhibits 6, 10, 21, 22 and 23 and evidence of appellees' tender. The record shows that subsequent to the execution of her will, Josephine Cook became ill and a guardian was appointed; that the attorney for the estate notified the four groups of legatees to be present either in person or by representative at a meeting on a proposal to sell all the real estate, explained the terms of the sale and stated at such meeting that all five tracts must be sold if they desired to break the will. At that time representatives of the four groups met and agreed that all the land be sold as it had been explained to them. Pursuant to such agreement, four of the five tracts of land had been sold before Josephine Cook died, July 18, 1954. An agreement in partition between joint owners is a valid one. Joint owners have the right and may orally partition their joint land as well as personal property, and such oral partition is not within the statute of frauds, therefore valid.

Dalton Hamer, a defendant in the trial court and a nephew of the deceased, testified he attended a meeting at the Courthouse about February 1, 1953; that his sister Mary Hamer, Burch Hamer, Ila

Haynes who was J. W. Cook's daughter, Truman Cook and Marlin Cook, also attended; that "the judge brought it up about we had to sell the land to take care of Aunt Josie, she had run out of money and they borrowed some money at the Bank, and we all discussed it for a few minutes and decided to sell the land and divide the estate if there was anything left, divide it four ways." To sell everything she had, the whole five tracts, and:

"Q. Was there a representative there of each of the four groups at this meeting? A. No sir, Jessie Wylie was not there, but the Hamer kids, John Cook's kids and Henry Cook's kids.

"Q. Was there any representative there of these defendants in this lawsuit? * * A. Yes sir.

"Q. Who was it? A. Marlin * *

"Q. Well was Mr. Harrington at this meeting? A. Yes sir.

"Q. Tell the jury who Mr. Harrington was. A. He was attorney for the Josephine Cook estate.

"Q. That is the guardianship estate? A. Yes sir.

"Q. Did Mr. Harrington explain to the group why all of the land should be sold? * * * A. He told me if any of the land was sold and one piece left the will would not be broken, and that is the reason I contended for all of the land to be sold, to where it could be divided equally, you know, what was left.

"Q. Was it agreed they were to sell all of the land? A. Yes sir, it was agreed."

All parties thereafter agreed and application was made to the Probate Court, and after proper proceedings all of the land was ordered to be sold and used to meet the needs of Josephine Cook, n. c. m. However, by the time of the death of Josephine Cook on July 18, 1954, only four of the five tracts had actually been sold.

Jessie Wylie, a niece of Josephine Cook, deceased, testified she saw her aunt frequently when she lived close to Plano; in 1916 she moved to Oklahoma and thereafter saw her once or twice a year; stayed in her home in 1950 a week or more; that her Aunt Josie asked her, "'Jessie, when I die are you going to fuss over my estate?' I said, 'No, Aunt Josie, I haven't got anything to fuss about,' and she said, 'Oh yes, you will get a share like the rest of them, you will get your pappy's part of the estate.'

"Q. Did she or not at that time say she had made a will? A. Yes, she said, 'I have made a will.'

"Q. Did she say anything else concerning the will? A. No, sir, I turned the subject off, I didn't talk to her about it, I didn't want to.

"Q. I will ask you if she stated how she divided the estate by will? A. Yes, she told me that. * * *

"Q. What did she say in reference to dividing the property by will? A. She said the Hamer children got 40 acres of the north 80 and 10 acres in the bottom; Uncle John got 53 acres, I think it was, on the west side of the road, and Uncle Henry's children got 40 acres at Addison.

"Q. Did she or not at that time make any statement as to how she divided the personal property? A. Yes, sir, the Hamer children got her personal property." That Judge Harrington wrote her he had sold the land; she learned later that the court had ordered the sale under the agreement between the heirs. On the day of the funeral she was present when Kyle said, "I think the only way to divide the estate would be four ways" and Marlin said "That is the only way that it can be divided fair." When she arrived at Mr. Boyd's office in McKinney, "Mary and Burch, Dalton, Neal, Kyle, Marlin" and she were there, and when the meeting convened she described the happenings as follows:

"A. Well, the best I can remember, Mr. Funderburgh brought a little lock box in and set it on the table, and Mr. Boyd said—I couldn't hear the exact words, I don't recall what they were, but he opened the box, and when he opened the box he took out a long envelope, about so long (indicating), and said, 'This has been opened,'—said it had been opened and sealed back with scotch tape, and he held the envelope up for us to see that it had been opened.

"Q. After he had finished reading the will did Mr. Boyd make any comments to those present? A. Well he talked a few minutes to us.

"Q. Do you recall what he said? A. No sir, that has been quite a good while and I don't recall everything he said.

"Q. Did any of the heirs present have anything to say? A. Yes sir.

"Q. What is the first thing you recall being said, and who said it? A. Well, I wouldn't be positive, but I think it was Truman.

"Q. What did Truman say? A. I think he said the only way they could divide the estate would be four ways.

"Q. Did anyone else say anything? A. Yes, Kyle and Marlin.

"Q. What did they say? A. They said the only fair thing to do was to divide it four ways.

"Mr. Renfro: I object to that as hearsay as to my clients.

"Q. Did any of the Hamers say anything? A. Yes, sir, they all said that would be the only fair way to divide the estate.

"Q. What comments did you make? A. I didn't make any, I kept my mouth shut."

On cross-examination she stated, material here, that she signed the agreement, and as follows:

"Q. There was some discussion about how to proceed with the handling of the estate? A. I think there was.

"Q. That Mr. Funderburgh would be administrator and Roland Boyd would be his attorney? A. Yes sir.

"Q. And there was a discussion about the probable cost, wasn't there? A. Yes sir.

"Q. And there was practically no discussion about any division? A. Nothing but dividing it four ways, that was all the discussion there was.

"Q. Well didn't Burch Hamer and perhaps Mary Hamer, say they wouldn't agree to four ways? A. No sir, I don't think they did."

On October 6, 1954 Roland Boyd, in whose office the above took place, wrote Gerald Stockard, a Denton attorney, as follows:

"Mr. Kyle Cook and his brother, Marlin Cook, just left this office. They said if you would prepare an agreement for all the Josephine Cook Estate heirs to sign agreeing to divide this estate in four equal shares, have all the heirs sign it and acknowledge same before a Notary Public and mail to my office at McKinney, Texas, not later than October 14, 1954, that then all of them would come here and sign and we would settle the case on that basis. They said if this were not done by October 14, that they would proceed. Thank you very much."

Without further quoting from the record we must hold the issues above outlined were properly submitted to the jury and that the evidence supported the jury's findings to such issues. Points 9 and 10 are overruled.

Points 11 to 14 inclusive assert error, (11) in admitting plaintiffs' Exhibits 21 and 22; (12) in admitting Exhibits 6, 10 and 23; (13) in overruling defendants' objections to issue 13; and (14) that the evidence was insufficient to support jury

finding 13. Countered by appellees that the evidence was sufficient to support the jury's findings, and the court properly admitted Exhibits 6, 10, 21, 22 and 23.

What we have said under other points as to the four-way agreement is applicable here, and supports the submission of the issues, the jury findings thereto, and the judgment. For the reasons there stated, points 11 to 14 inclusive are overruled.

■ Points 15 and 16 assert error in overruling appellants' motion to strike the statement of counsel for Hamer et al., that the plaintiffs would agree to divide all money on deposit in four equal ways amoung the four sets of heirs; and (16) in overruling appellants' motion for mistrial because of the statement made by counsel for plaintiffs offering to divide all money in four equal ways provided the land is divided four ways. Countered that the evidence of appellees' tender was properly admitted in evidence.

Appellants' statement in full was: "At the conclusion of plaintiffs' testimony in chief and after their attorney had announced he had rested, he then arose and stated: 'I need to make a stipulation prior to my resting, I am very sorry.' He then proceeded and said: 'In behalf of the Hamer children we do hereby stipulate and agree to divide all monies on deposit in four equal ways among the four sets of heirs, when the property is divided four equal ways, the 40 acres, and accordingly a tender is so made.' The Hamer children were claiming one-fourth of the property. Attorney for appellants then stated: 'I object to that, it is brought in here as he finishes his lawsuit, and for fear that he has not made out a case, he is now making a tender here for the obvious purpose of obtaining some sort of influence on the jury. I object to it, and ask the court to instruct the jury not to consider what the gentleman said for any purpose.' The objection was overruled. Whereupon counsel for appellants then moved for a mistrial of the case." Appellants' contention

is that the statement was not material, was highly prejudicial and caused the jury to make findings to many of the issues in the absence of any probative evidence to support such findings.

Under our view of the record the tender here involved was in line with appellants' pleadings and their evidence as to the oral four-way partition alleged by them and if error, which we do not find, it was harmless under all circumstances here. Points 15 and 16 are overruled.

■ Point 17 asserts error in appointing a receiver to sell the property in the custody of the Probate Court of Collin County.

The record discloses the parties made an oral partition of the property of the deceased, that is, one-fourth of the property to each of the four groups of children, and carried it out to the extent of selling four of the five pieces of property; and after paying all debts for the last sickness, burial, etc., of the deceased, the balance was thereafter to be divided into four equal parts, one part to be owned by each group of children as heirs. Such procedure was, in the trial court's sound discretion and judgment, the best under the facts of this case, and the District Court's equity jurisdiction was properly exercised here. County Court's probate jurisdiction was inadequate to grant the full relief sought by the parties in this suit and the appropriate rule here was announced by our Supreme Court in Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980, at page 985: "The provisions of the Constitution confer upon the district court equity jurisdiction in as broad terms as is conferred probate jurisdiction on the county court. When it appears by the pleadings and the proof that the suit involved controversies and issues between the parties for which the probate jurisdiction of the county court is inadequate to grant the relief sought, then the district court has jurisdiction, and may grant the necessary relief [Citing authorities]. The district court, having properly

assumed jurisdiction to construe the will of Mrs. Potts and adjudicate the issues raised by the pleadings and the evidence, had the power to appoint a receiver for the preservation of the property involved. This power was inherent in the court, and was incident to the exercise of its jurisdiction until the case was finally determined [Citing authorities]." See also Wade v. Wade, 140 Tex. 339, 167 S.W.2d 1008, syl. 4, by our Supreme Court. Point 17 is overruled.

Finding no error in the trial court's judgment, it is

Affirmed.