**IOWA MUTUAL INSURANCE COMPANY et al., Appellants,**

v.

**Kurt BURMESTER, Appellee.**

No. 13265.

Court of Civil Appeals of Texas.

Houston.

May 22, 1958.

Chilton Bryan, Houston, E. H. Patton, Jr., Houston, of counsel, for appellants.

W. James Kronzer, Houston, Hill, Brown, Kronzer & Abraham, Houston, of counsel, for appellee.

· WOODRUFF, Justice.

This appeal has been taken from an order dated November 14, 1957, entered by the 151st District Court of Harris County in Cause No. 448,268, styled Kurt Burmester vs. Houston Belt & Terminal Railway Company et al., under circumstances hereinafter set forth. On January 14, 1956, the trial court rendered judgment in that cause in a personal injury action in behalf of Kurt Burmester against Houston Belt & Terminal Railway Company and D. D. Danner and J. W. Maxcey, doing business as Danner's Marine Guard Service, jointly and severally, for $173,396.05 plus 6% interest from that date until paid. Those defendants appealed to this Court from that judgment without furnishing a supersedeas bond, and on December 5, 1957, after a suggested remittitur of $40,000 had been filed, the judgment of the trial court was affirmed in the sum of $133,396.05.

During the pendency of the appeal and before the submission of the case to this Court, appellant here, Iowa Mutual Insurance Company, on October 22, 1957, filed a pleading in the District Court of Harris County in Cause No. 448,268, styled Kurt

Burmester vs. Houston Belt & Terminal R. R. Company et al., which was designated as an "Interpleader", wherein it was alleged that Iowa Mutual was the insurance carrier for James W. Maxcey and D. D. Danner, doing business as Danner's Marine Guard Service. It further alleged that under the terms of the policy reserving such rights to it, Iowa Mutual had taken over the investigation and defense of the suit in which Burmester had recovered judgment for $173,396.05 against the defendants, of which amount as between themselves 50% was against Danner's Marine Guard Service, the partnership composed of James W. Maxcey and D. D. Danner, and 50% was against Houston Belt & Terminal Railway Company. Iowa Mutual further alleged that the appeal from that judgment was still pending and that the total amount of its policy applicable to the accident was $50,000; that the interest at the rate of 6% on $50,000 from the date of the judgment in the trial court to October 23, 1957, amounted to $5,358.34, which added to the $50,000 amounted to $55,358.-34, which it "tendered" into the registry of the court by delivering its draft therefor to the District Clerk *"to discharge its liability under it (sic) above numbered and described policy* and to stop the running of interest in so far as its policy would be applicable to the payment of interest." (Emphasis ours.)

The pleading then moved the court "to accept the above sum of money in full discharge of all liability of every kind and character of Iowa Mutual Insurance Company * * * under its policy issued to Danner's Marine Guard Service and James W. Maxcey and D. D. Danner, partners thereof, including principal and interest * * *." It was signed by Mr. Chilton Bryan, "Authorized attorney for Iowa Mutual Insurance Company." Mr. Bryan is the same attorney who represented the appellants, Danner's Marine Guard Service, James W. Maxcey and D. D. Danner, in the trial court and on appeal. There was no prayer for the issuance of notice or service of citation on anyone.

On November 6, 1957, appellee, Kurt Burmester, filed his "Reply to Motion of Iowa Mutual Insurance Company and Cross-Motion" wherein he alleged that the tender by Iowa Mutual of the sum of $55,-358.34 did "not satisfy the obligation of Iowa Mutual Insurance Company, either to its assureds, James W. Maxcey and D. D. Danner, and Danner's Marine Guard Service, Insureds, a partnership, or to plaintiff, Kurt Burmester," contending that Iowa Mutual was obligated to pay interest at the rate of 6% on the whole amount of the judgment and that it should not be discharged "from its continuing liability to its assureds," J. W. Maxcey et al. under its policy of insurance.

Appellee further alleged that the judgment of the trial court dated January 14, 1956, had not been superseded; that Iowa Mutual was obligated to pay all interest accruing on the total judgment after its entry; and that the court could not order the payment and application of the sum deposited in the registry of the court and fully discharge Iowa Mutual from any further liability under its insurance policy.

By way of cross-motion appellee Burmester pled that the judgment of the trial court had not been superseded and that under the terms of the policy he was entitled to direct action against Iowa Mutual Insurance Company when "the insureds' obligation to pay shall have been finally determined either by judgment against the insureds after actual trial or by written agreement of the insureds, the claimant and the company."

Appellee then prayed for an "order directing Hon. R. J. Lindley, District Clerk of Harris County, Texas, to pay out of the registry of the court in partial satisfaction of the judgment in the above entitled and numbered cause the sum of $55,-358.34" and such other orders as were proper.

There was no prayer for the giving of notice to or service of citation on anyone, and while the order recites "due and proper notice to all interested parties," the record fails to show any service of citation or any appearance of any character by either James W. Maxcey, D. D. Danner, or Danner's Marine Guard Service, and of course the Houston Belt & Terminal Railway Company did not appear. Certainly, it cannot be seriously contended that Mr. Bryan's appearance in seeking a discharge of the liability of Iowa Mutual was an appearance for its assureds, James W. Maxcey, D. D. Danner, or Danner's Marine Guard Service.

The trial court, thereafter, on November 14, 1957, entered an order directing the Clerk to pay the $55,358.34 to Kurt Burmester or his attorneys, stating that upon the withdrawal thereof "said judgment should be credited with such amount in favor of J. W. Maxcey, D. D. Danner, and Danner's Marine Guard Service, and their liability insurance carrier, Iowa Mutual Insurance Company, and the remainder of said judgment shall continue to bear interest at the rate of 6% per annum until paid."

This order further provided as follows:

"It is further ordered that such payment of $55,358.34 is not to be in full satisfaction of plaintiff's claim against J. W. Maxcey, D. D. Danner, and Danner's Marine Guard Service, and Iowa Mutual Insurance Company, and will be accepted by the plaintiff only upon the conditions set out in this order."

The Iowa Mutual Insurance Company excepted to the entry of the order and perfected this appeal.

At the hearing no evidence was introduced and no proof was made of the terms of the policy in force between Iowa Mutual and Danner. Iowa Mutual has appealed upon a transcript containing the so-called "Interpleader" filed in the trial court in Cause No. 448,268, styled Kurt Burmester vs. Houston Belt & Terminal Railway Company et al., tendering the $55,358.34 to the Clerk; the reply and cross-motion filed by Kurt Burmester under the same style and number; the court's order under the same style and number; and the exceptions taken thereto by Iowa Mutual.

By four points of error Iowa Mutual contends that the order of November 14, 1957, entered by the trial court is not a final order determining its liability for additional interest; that any such construction of the order would be void for want of pleadings and evidence to support it; that Kurt Burmester, not being a party thereto, has no rights under the policy until the judgment becomes final; and that the court erred in denying Iowa Mutual a full discharge.

Appellee Burmester, on the other hand, suggests that this Court lacks jurisdiction of the appeal because (1) the record is insufficient to grant relief unless the statement contained in appellee's pleadings can be taken as reflecting the contents of the policy; and (2) the main judgment not having been superseded, appellee was and is entitled to effectuate collection without regard to the action of this Court.

At this juncture consideration should be given to the nature of the proceedings initiated by Iowa Mutual in filing the so-called "Interpleader." In our opinion, it was not an interpleader. It was not filed by Iowa Mutual for the purpose of requiring adverse claimants to a fund which it held to assert their respective claims thereto so that it would not be exposed to multiple liability or vexatious litigation. This is an essential element of an interpleader. Rule 43, Texas Rules of Civil Procedure; Gillespie v. Citizens National Bank of Weatherford, Tex.Civ.App., 97 S.W.2d 310; Nixon v. Malone, Tex.Cix.App., 95 S.W. 577, Id., 100 Tex. 250, 98 S.W. 380; 25 Tex.Jur., Sec. 3, p. 52; 48 C.J.S. Interpleader § 2,

pp. 38–40; 30 Amer.Jur., p. 480. Iowa Mutual did not allege that Maxcey and Danner were asserting a claim to the $55,-358.34 which it paid over to the Clerk of the trial court. In interpreting this pleading we must be governed by its substance and purpose and not by its form. Custer v. McGough, Tex.Civ.App., 184 S. W.2d 668.

■ This proceeding, in our opinion, amounted to no more than a motion filed by Iowa Mutual in Cause No. 448,268, styled Kurt Burmester vs. Houston Belt & Terminal Railway Company, in an attempt to make a payment of $55,358.34 to the Clerk of the trial court to apply on that part of the judgment which had been rendered against J. W. Maxcey and D. D. Danner, coupled with the prayer that the trial court "accept the above sum of money in full discharge of all liability of every kind and character of Iowa Mutual Insurance Company of DeWitt, Iowa," under its policy. It was not filed as an independent suit and apparently it was Iowa Mutual's theory that upon payment of that sum of money to the Clerk the court had jurisdiction to enter an order of discharge and to release it from all further liability to any and all of the parties to the suit, including Maxcey, Danner and Burmester. As we view the authorities, the trial court had lost jurisdiction of both the subject matter and the parties to the suit long before Iowa Mutual had delivered the money to the Clerk. Although a Clerk, when expressly directed to do so by the court in rendering a judgment, may accept payment thereon (Gulf, Colorado & Santa Fe R. Co. v. Styron, 66 Tex. 421, 1 S.W. 161), in the absence of such order or a statute expressly empowering him to do so, he has no authority to collect or receive any money due upon a judgment. Texas & P. R. Co. v. Walker, 93 Tex. 611, 57 S.W. 568; Rushing v. Thomas, Tex. Civ.App., 63 S.W.2d 323, no writ history; 26 Tex.Jur. 493, Sec. 635; 49 C.J.S. Judgments § 552, p. 1022.

In Texas & P. R. Co. v. Walker, 93 Tex. 611, 57 S.W. 568, 569, a minor, who had no guardian, recovered a judgment for $250 against the appellant in an earlier action brought in the district court, from which no appeal was prosecuted. Of this amount $125 was allowed as a reasonable fee and paid to the attorney representing the minor. No execution having issued, this suit was instituted to revive that part of the judgment which was allocated to the minor, it being alleged that the judgment was not paid. It was proven that soon after the rendition of the judgment appellant paid to the clerk the full amount thereof, in the sum of $250 and that the minor had no guardian at that time. Whether this suit to revive the judgment was sustainable depended upon the authority of the Clerk in his official capacity to receive the money in satisfaction of the judgment.

The Supreme Court, in answering the question certified by the Court of Civil Appeals, in part said:

"The statutes of this state abound with provisions defining and regulating with much detail the duties and powers of district clerks, but among them we find no trace of any such duty as that of collecting or receiving money due upon judgments. * * * Express authority is given to him to receive money for specified purposes. Money or property deposited in court during the progress of any cause to abide the result of any legal proceeding is to be kept by him in a manner specifically prescribed by statute; and it is expressly made his duty to deliver it to his successor, and his bondsmen are expressly made responsible for the proper performance of this duty. * * *"

The court then discussed the statutes giving express authority to the Clerk to receive money for certain specified purposes, and the disposition and accounting

thereof to be made by the Clerk. Then passing to the consideration of the question as to whether or not the Clerk of the court is authorized to receive money in payment of a judgment rendered by the court, Justice Williams said:

"The fact that express authority is given to receive money in the cases noted, and the absence of any notice of what would be a much more extensive and important one, argue very strongly that it was not intended that the latter should exist. And this conclusion is rendered plain by the provisions of article 3291 [now article 5450], which prescribe the evidence of satisfaction of judgments essential to authorize the county clerk to enter satisfaction upon the record of abstracts. The modes in which satisfaction for this purpose may be shown are (1) the return on an execution, or a copy of such return, certified by the officer to whom it is made [the district clerk]; and (2) the receipt, etc., of the party entitled to receive payment, or his agent or attorney of record. Thus, it appears that the clerk of the district court may show satisfaction by a certified copy of a return, but not by a receipt or certificate showing payment to himself, as would undoubtedly have been provided had he been authorized to accept payment. It may be true that the court may order money paid into court in satisfaction of its judgment, and may make the clerk the custodian of it. It being the duty of the clerk to obey legitimate orders of the court, it would then become his official duty to carry out such directions as the court might make. But this would not be the exercise of an authority conferred by law generally, but of one arising from the particular order or judgment. Gulf, C. & S. F. Railway Co. v. Styron, 66 Tex. [421] 427, 428, 1 S.W. 161."

And, in Rushing v. Thomas, Tex.Civ. App., 63 S.W.2d 323, 324, it was stated:

"The rule is that in the absence of a special statute giving him authority or order of court to that effect, a clerk has no authority to collect or receive money due upon a judgment, and payment to the clerk in the absence of such authority is not a satisfaction unless he was the agent of the judgment creditor."

In City of Whitesboro v. Diamond, Tex. Civ.App., 75 S.W. 540, the appellant had instituted a number of suits in the district court against delinquent taxpayers to recover unpaid taxes and to foreclose tax liens. Two of the cases were compromised, judgment being entered in the City's favor in each of them for $25 and costs. These amounts, upon being paid to the Clerk of the court on the judgment were applied by him to the payment of costs charged against the City in other cases. The City challenged the right of the Clerk to make such appropriation and filed a motion with the Court to require him to pay over the money so appropriated. The Clerk resisted the motion, and upon the City's motion being overruled it appealed. In discussing this question, the Court of Civil Appeals in part stated:

"The district court had no jurisdiction of the matters set up in the motion. It was not the duty of the clerk to receive the money, and he cannot be held to have received it in his official capacity. Texas & P. Railway Co. v. Walker, 93 Tex. 611, 57 S.W. 568. It was not his duty, under the statute or the general law, to receive the money, and he had not been directed by any order of the court to receive it. He can be held liable, if at all, only in his individual capacity, and not as an officer of the court. His failure to pay over the money, even if he is not entitled to retain the same, was not a breach of any official duty, and he cannot be compelled, by motion filed against him in the district court, to discharge a personal obligation."

In view of these holdings, we cannot escape the conclusion that after a judgment has become final the court's jurisdiction over that case ceases and thereafter no order can be entered directing the Clerk either to accept a payment on such judgment or to pay over money received by him without having been so authorized in the final judgment. It necessarily follows that if the trial court does not have jurisdiction to enter those orders after the judgment has become final, it would also lack jurisdiction to determine in what manner money tendered to the Clerk as a payment should be applied on a judgment.

Appellee has cited the case of Manhattan Life Insurance Co. v. Stubbs, Tex.Com. App., 234 S.W. 1099, as an authority to sustain the position that the trial court may order an application of funds tendered into the registry of the court. The tender in that case was made during the pendency of the suit and therefore the trial court had jurisdiction over the cause in which the money was tendered, and consequently it had the power to determine the disposition of the fund in rendering the final judgment therein. It is apparent that the rules laid down in that case are not applicable here where the so-called "tender" was made long after the final judgment had been entered and the trial court had lost jurisdiction of the case.

In our opinion, therefore, the trial court was without jurisdiction in Cause No. 448,268, styled Kurt Burmester vs. Houston Belt & Terminal Railway Co. et al., to hear or determine the motion of Iowa Mutual Insurance Company filed therein on October 22, 1957, as well as the reply and cross-motion of Kurt Burmester. Therefore, the order entered on November 14, 1957, 22 months after the final decree had been entered, was void and without any force. The fact that the judgment entered January 14, 1956, in this case, was not superseded could not prevent the trial court from losing jurisdiction of the case.

We, therefore, conclude that the motion of Iowa Mutual Insurance Company and the reply and cross-motion of Kurt Burmester should have been dismissed by the trial court for want of jurisdiction and the cause is, therefore being remanded to that court with instructions that the order of the trial court dated November 14, 1957, be set aside and that the motion and cross-motion be accordingly dismissed.