MERCANTILE NATIONAL BANK AT
DALLAS et al., Appellants,

v.

NATIONAL CANCER RESEARCH FOUN-
DATION et al., Appellees.

No. 17926.

Court of Civil Appeals of Texas,
Dallas.

Nov. 16, 1972.

Rehearing Denied Dec. 14, 1972.

Edward J. Drake, Brady, Drake & Wilson, Robert F. Ashley, Ashley & Welch, Dallas, for appellants.

Samuel J. Ferro, Jr., Spafford, Gay & Whitham, Dallas, Crawford C. Martin, Atty. Gen., Robert L. Lemens, Asst. Atty. Gen., Austin, for appellees.

BATEMAN, Justice.

This is a suit by Mercantile National Bank at Dallas, as executor of the estate of Grace Greenwood Taylor, deceased and the residuary legatees under her will, to construe the will, and particularly paragraph 4 thereof, reading as follows:

"I give, devise and bequeath to the National Cancer Research Foundation, the sum of $10,000.00."

Alleging the Bank's inability to locate a foundation bearing that exact name, the plaintiffs asked the court to determine, if possible, the identity and location of the beneficiary so designated. Among the defendants named were American Cancer Society, Texas Division, Inc., American Cancer Society, Inc., National Cancer Foundation, Inc. and the Attorney General of Tex-

as. At the conclusion of a nonjury trial the court rendered judgment decreeing that the designated beneficiary was National Cancer Foundation, Inc., of New York, New York, and that the plaintiffs' attorneys were entitled to a reasonable attorneys' fee of $1,500 to be paid from the residuary estate of Grace Greenwood Taylor, and not out of the $10,000 bequest in question. American Cancer Society, Inc. and American Cancer Society, Texas Division, Inc., and the Attorney General appeal from that portion of the judgment identifying the beneficiary. The plaintiffs appeal from the portion relating to the attorneys' fee.

### The Identity of the Beneficiary

Included among the findings of fact by the trial court were findings that Grace Greenwood Taylor executed her will on April 8, 1966 and died on April 10, 1968, at which time she "was a very young, very intelligent 81 years of age," that she had been a school teacher all of her life and that her sister, also a retired school teacher, had previously died of cancer; that by her will she left bequests to eleven different charitable organizations and fourteen individuals, one of the charitable bequests being to "National Cancer Research Foundation"; that there is no organization with that exact name, but that there is a "National Cancer Foundation, Inc."; that in nine of the eleven charitable bequests the legatees were incorrectly named; that the National Cancer Foundation, Inc. does research, has helped residents of Texas and has received other gifts from residents of Texas; that the decedent intended the bequest in question to go to the National Cancer Foundation, Inc., New York, New York.

Additional findings of fact were that Grace Greenwood Taylor had been a resident of Dallas County for many years; that every charitable bequest contained in her will, except for the one in question, was to an organization located in Texas or having a local unit within the State of

Texas; that American Cancer Society, Inc. is active in all states of the United States through its affiliates known as "Divisions"; that American Cancer Society, Texas Division, Inc., has many local units throughout the State of Texas, its work in Dallas, Dallas County, Texas, being done through its Dallas County Unit; such activities including transportation, counseling for the cancer patient and his family, supplying sick room necessities such as hospital beds, etc., supplying surgical dressings prepared by volunteers, extensive research in the medical facilities at Dallas relating to the detection and treatment of cancer, public education primarily emphasizing the warning signals of cancer, professional education of doctors and other professionals engaged in the care and treatment of cancer, and regular annual financial drives in Dallas County for the support of its work; that the governing body of National Cancer Foundation, Inc. consists of thirty-six directors residing in the vicinity of New York City, while American Cancer Society, Texas Division, Inc. is governed by a Board of Directors, all of whom reside in Texas; that the Dallas County Unit thereof is governed by a board of lay and medical directors of more than one hundred people in Dallas County; that National Cancer Foundation, Inc., to its knowledge, has never received a gift or contribution from Grace Greenwood Taylor or her sister; that in the year immediately preceding her death the decedent made a small financial contribution to "Cancer Fund"[1] which was cashed by American Cancer Society, Texas Division, Inc., Dallas County Unit; that National Cancer Foundation, Inc. spends no funds for laboratory research in connection with the detection, care or treatment of cancer and that the "research" done by it is principally in the nature of studies in connection with the sociological factors relating to the advanced cancer patient and his or her family.

There was competent evidence to support all of the foregoing findings of fact, and there is no substantial dispute as to the facts.

By their first two points of error the appellants, the American Cancer Societies, contend that there was no evidence to support the trial court's finding that the decedent intended the bequest in question to go to National Cancer Foundation, Inc., and that the court erred in so finding as a matter of law.

■ In passing upon a "no evidence" point we view the evidence in its most favorable light in support of the finding under attack, East Texas Theatres, Inc. v. Rutledge, 453 S.W.2d 466 (Tex.Sup.1970), and this is as true in the case of a finding by the court as by a jury. Commercial Union Assurance Co. v. Foster, 379 S.W.2d 320 (Tex.Sup.1964); Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953); Chapman v. Nelson, 470 S.W.2d 112 (Tex.Civ.App., Beaumont 1971, no writ).

The American Cancer Societies presented voluminous evidence of their activities in financing medical research relating to the detection and treatment of cancer, of their educational programs, and of their fund raising methods. This evidence is impressive and undisputed.

Yet, there was also competent evidence that National Cancer Foundation, Inc., also did research, although primarily sociological in nature, but that this embraces the medical aspect of research (which is specifically authorized by its charter) and care of the patient; that the Foundation is concerned in the delivery of professional social service for the patient's care and that of his family at home by way of consultation and education; also that the Foundation publicizes its activities through the traditional media of television, radio, newspapers, magazines and educational journals; that it produced a film called "A Special Kind of Care" seen in all parts of

1. This $5 check was payable to "Cancer Research Fund."

the country, including Texas; that it conducts national symposiums on the advanced cancer patient which are attended by many people from Texas; that it sends its publications to the Texas Department of Public Welfare, and has had many contributors in the State of Texas, including Dallas, since the 1940's; that it and its program have helped people in Dallas and in Texas since 1947; that it has had annual television programs on such nationally viewed shows as the "Today Show" on NBC, and that its executive director has appeared on the nationally viewed NBC show called "For Women Only" and also a week's program concerned with cancer.

These facts do not conclusively prove that the testatrix in this case knew of National Cancer Foundation, Inc. or that she intended to name it as a beneficiary in her will, but they do show that there were numerous means by which she could have known of it and the work it was doing.

■ In our opinion, the trial court's judgment in this respect was fully justified and we have no solid reason for reversing it. The only difficulty presented here is the insertion by the testatrix of the word "Research" in the name of the beneficiary. This created a latent ambiguity and authorized the admission of extrinsic evidence, not for the purpose of showing the testatrix' intention by proof of her oral declarations as to what she intended, but to give effect to the intention expressed in the will. Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382, 384 (1892).

■ Of course, the primary goal is to ascertain the will of the testatrix, and when a latent ambiguity makes proper the consideration of such extrinsic evidence the matter of her intention becomes a question of fact. Moss v. Helsley, 60 Tex. 426, 438 (1883); Cook v. Hamer, 302 S. W.2d 680, 683 (Tex.Civ.App., Dallas 1957, affirmed 158 Tex. 164, 309 S.W.2d 54). It may be "a mixed question of law and fact," but in either case should be submitted to the triers of the facts. Haupt v.

Michaelis, 231 S.W. 706, 711 (Tex.Com.App. 1921, jdgmt adopted); Waxler v. Klingemann, 272 S.W.2d 746, 748 (Tex.Civ.App., Austin 1954, writ ref'd); Kelley v. Harsch, 161 S.W.2d 563, 567 (Tex.Civ.App., Austin 1942, no writ); 61 Tex.Jur.2d, Wills, § 215, p. 343; Brown v. Burke, 26 S.W.2d 415, 416 (Tex.Civ.App., Waco 1930, no writ).

■ In disregarding or rejecting the word "Research" the court was following the well recognized rule in will construction cases that words, or clauses or sentences, or even whole paragraphs, may be transposed, supplied *or rejected* in arriving at the real intention of the testator. McClure v. Bailey, 209 S.W.2d 671, 675 (Tex. Civ.App., Waco 1948, writ ref'd n. r. e.) and cases cited therein; Jackson v. Evans, 305 S.W.2d 236, 240 (Tex.Civ.App., Fort Worth 1957, writ ref'd n. r. e.).

Counsel for the American Cancer Societies and the Attorney General argue quite convincingly that the testatrix must have intended this bequest to go to American Cancer Society, Texas Division, Inc., because of the voluminous evidence of its many local activities and the thousands of people engaged therein, saying that "she was surrounded by their activities and people associated with them." They argue, in effect, that an alert and intelligent woman, such as the testatrix, must have been quite familiar with the name and good works of American Cancer Society and, therefore, must have intended it to be the beneficiary instead of National Cancer Foundation which operated principally in the vicinity of New York City and was not as well known locally. It is inconceivable, at least to this writer, that if she had meant to name an organization as well known as American Cancer Society she would have designated one not so well known and with a name so dissimilar. The two names had nothing in common except the word "Cancer" and could not readily be confused. See American Cancer Soc., Mo. Div. v. Damon Runyon Mem. F., 409 S.W.2d 222, 225 (Mo.App.1966).

We are not concerned here with the sagacity of leaving the money to the one charity or the other. It is not our function to determine which of them would put the money to better use for the benefit of mankind. It was the will of Grace Greenwood Taylor, not ours, and we have no right, under the guise of construction or interpretation, to make it conform to our notion of the proper recipient of her largess. The trial court has found as a fact that she intended the bequest to go to National Cancer Foundation, Inc. This finding is supported by evidence of probative value, is not manifestly erroneous and is therefore binding on this court. Russell v. Adams, 299 S.W. 889, 893 (Tex.Com.App. 1927); Banks v. Crawford, 330 S.W.2d 243, 246 (Tex.Civ.App., Houston 1959, writ ref'd n. r. e.); Bavousett v. Bradshaw, 332 S.W.2d 155, 159 (Tex.Civ.App., Amarillo 1959, writ ref'd n. r. e.). This intention "must govern, even if it result in what we might consider unjust or absurd consequences." Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145, 147 (1896). Accordingly, we overrule the first point of error of appellants American Cancer Societies.

This makes it unnecessary for us to consider or pass upon said appellants' second point of error, which complains of the trial court's similar finding as a matter of law, or of their third point of error, which is submitted alternatively in the event the beneficiary of the bequest in question cannot be ascertained.

The Attorney General of Texas has filed a brief as an appellant. His first two points of error attack the trial court's finding that National Cancer Foundation, Inc. does research. These points are overruled because, as shown above, there was competent evidence to support the finding.

His points of error Nos. 3, 4 and 7, complaining of the finding as to the intended beneficiary as a matter of law, are not considered because of our holding that the question was one of fact and that we are bound by the trial court's finding.

The Attorney General, in his fifth point of error, complains that the said finding was so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. His point No. 6 says there was no evidence to support the finding. We have carefully studied the entire record and in the light thereof we consider these points of error to be without merit and, therefore, overrule them.

### The Plaintiffs' Attorneys' Fee

The Mercantile National Bank at Dallas and the several residuary legatees under the will appeal from that part of the judgment directing that their attorneys' fee be taken, not from the $10,000 bequest in question but from the residue of the estate. They contend that the lawsuit was in the nature of an interpleader of a fund of which the Bank was a stakeholder, and that the court erred in not awarding the attorneys' fee to the plaintiffs out of the bequest itself.

While the suit in some respects resembles an interpleader, it is not the type of interpleader contemplated by Texas Rules of Civil Procedure 43. The said plaintiffs did not pay or offer to pay into the registry of the court a certain fund to which they alleged different parties were claimants. Instead, the suit was essentially one for construction of the will and for instructions as to payment of a bequest. It does not appear that up to the time of filing of the suit either of the contesting charitable organizations had made any claim against the Bank as executor. The executor's interest was not so much to avoid exposure to multiple liability or vexatious litigation, which is said to be an "essential element" of an interpleader,[2] as it was to conduct a proper administration of

---

2. Iowa Mutual Insurance Co. v. Burmester, 313 S.W.2d 897, 900 (Tex.Civ.App., Houston 1958, no writ).

the estate and make a proper distribution of its assets.

Of course, the effect of the ruling of the trial court is that the residuary legatees will bear the expense. However, in that sense they must bear all of the expenses of administration. As we see this record, the attorneys' fee was a legitimate expense of administration and the trial court was correct in directing its payment as such. Thornhill v. Elskes, 412 S.W.2d 73, 75 (Tex.Civ.App., Waco 1967, no writ). Therefore, this point of error is overruled.

We are of the opinion that the judgment appealed from was correct. It is therefore affirmed.

GUITTARD, Justice (concurring).

The holding of the majority that a fact issue is raised whenever extrinsic evidence is properly admitted to explain an ambiguity in a will is consistent with the language of the opinions cited,[1] but it seems to me to allow too broad a scope for the triers of facts in determining the testator's intention. Although this case was tried without a jury, the scope of the fact-finding function would be the same in a jury trial.

To the extent that Texas courts ever allow writings to be interpreted by juries, they depart from the common law. Professor Thayer has pointed out that in England interpretation of a writing, though a matter of fact, was always done by the judge without a jury, and he explains the practice by "considerations of good sense and experience," since judges were better educated, less likely to give varying interpretations, and more likely to adhere to precedents.[2] Some American courts have adopted the view that if the circumstances are undisputed or established by fact findings, interpretation of a writing is a question of law, since it is within the province of the court as distinguished from the jury and subject to review by appellate courts.[3] This view has been justified on the ground that the trial court's superior opportunity to observe the demeanor of the witnesses and other factors not fully shown by the record on appeal, which is the reason for the usual rule giving controlling weight to findings of fact, does not apply to the process of determining the meaning of a writing in the light of undisputed circumstances.[4]

Texas courts, beginning with Roberts v. Short, 1 Tex. 372, 384 (1846), have held that where the language of a writing is ambiguous, the court should admit extrinsic evidence to explain it and submit the question of intention to the jury. This practice has been reaffirmed as recently as Trinity Universal Insurance Co. v. Ponsford Bros., 423 S.W.2d 571 (Tex.Sup. 1968). Submission to the jury has been justified on the ground that if it is necessary to ascertain the facts surrounding the execution of a document, the jury should pass on the credibility of the witnesses and the weight to be given the evidence. Taylor v. McNutt, 58 Tex. 71 (1882). This rule has been applied to wills in the cases cited by Justice Bateman.[5]

The Texas opinions do not discuss the question of whether a jury issue is presented if the circumstances proved to explain the writing are undisputed or established by fact findings, as in the case now before us. They ignore the substantial possibility

1. Moss v. Helsley, 60 Tex. 426, 438 (1883); Haupt v. Michaelis, 231 S.W. 706, 711 (Tex.Com.App.1921, jdgmt adopted); Waxler v. Klingemann, 272 S.W.2d 746, 748 (Tex.Civ.App., Austin 1954, writ ref'd); Kelley v. Harsch, 161 S.W.2d 563, 567 (Tex.Civ.App., Austin 1942, no writ); Brown v. Burke, 26 S.W.2d 415, 416 (Tex.Civ.App., Waco 1930, no writ).

2. Thayer, "Law and Fact" in Jury Trials, 4 Harv.Law Rev. 147, 160 (1890).

3. Wehrhane v. Peyton, 133 Conn. 478, 52 A.2d 711 (1947); In re Melcher's Will, 246 Wis. 45, 16 N.W.2d 373 (1944); Borchers v. Taylor, 83 N.H. 564, 145 A. 666, 63 A.L.R. 874 (1929).

4. In re Melcher's Will, *supra* note 3.

5. *Supra* note 1.

that when the circumstances are known the testator's intention may be so clear that no ambiguity remains. For instance, a legacy may be considered ambiguous if two persons claiming it bear the name appearing in the will, but evidence showing that one claimant was a close associate of the testator and the other was a stranger may be strong enough that reasonable minds could not differ concerning the testator's intention.

The authority of the cases cited is weakened by the recent decision of the Supreme Court in Stewart v. Selder, 473 S.W.2d 3 (Tex.Sup.1971). There the court rejected the rule followed by some courts that extrinsic evidence cannot be received for the purpose of explaining an "unambiguous" will, and expressly adopted Dean Wigmore's view that evidence of circumstances may always be received to enable the court to place itself in the position of the testator when he executed the will.[6] If evidence of circumstances is always admissible, it would go too far to say that such evidence always raises a jury question. The language of the opinions cited probably means that an ambiguity explainable by extrinsic evidence raises a jury issue. But if evidence of circumstances is always admissible, it makes more sense to determine the question of ambiguity in the light of those circumstances and submit the question of intention to the jury (or give controlling weight to the trial court's finding of fact) only if a substantial doubt then

remains as to the testator's intention. The existence of a fact issue should be determined in the light of the extrinsic evidence, not by considering the language of the will alone.

Under Stewart v. Selder, *supra,* I believe the true Texas rule to be that the intention of a testator is a fact issue if, after resort to extrinsic evidence and all other aids to interpretation,[7] the language of the will is equivocal, that is, it could reasonably have more than one particular meaning.[8] This rule is in accord with the general Texas rule that a fact issue exists when more than one reasonable inference may be drawn from the undisputed facts. Nix v. Davis, 358 S.W.2d 225 (Tex.Civ.App., Houston 1962, no writ).

With this understanding of the fact-finding function, I conclude that the trial court's finding of the intention of the testatrix is binding on this court. The evidence and the trial court's findings reveal a true equivocation in the sense that after considering all the evidence, the language of the will may reasonably be interpreted as applying either to American Cancer Society, Texas Division, Inc. or to National Cancer Foundation, Inc. Although the evidence recited in Justice Bateman's opinion might lead me to find a different intention than that found by the trial court, I cannot say that there is no reasonable basis in the evidence for the trial court's finding or

6. 9 Wigmore, Evidence, § 2470 (3d Ed. 1940).

7. Some uncertainties in the intention of a testator can be resolved by a presumption, such as the presumption against partial intestacy and the presumption that the testator did not intend to dispose of any property other than his own. Haile v. Holtzclaw, 414 S.W.2d 916 (Tex.Sup.1967). In that case the court said the latter presumption "may only be overcome by language which clearly and without equivocation manifests a contrary intent." If such a presumption applies, it is difficult to see how the question of intention could be a jury issue. *Cf.* Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951) holding that a contract is ambiguous only when application of pertinent rules of construction leave it genuinely uncertain as to which of two meanings is proper.

8. In such cases even evidence of the testator's declaration of intention outside the will has been admitted. Pruett v. Berkeley, 405 S.W.2d 433 (Tex.Civ.App., Waco 1966, no writ); 9 Wigmore, Evidence, § 2474 (3d Ed. 1940); and see opinion in Stewart v. Selder, *supra.* Ordinarily courts exclude evidence of other declarations of intent by the testator, as distinguished from evidence of circumstances. Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382 (1892).

that it is so contrary to the overwhelming preponderance of the evidence as to be clearly wrong. Therefore, I concur in affirming the judgment.